IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT
WRITING AND EVACUATION SERVICES, INC.,

      Plaintiff,

vs.                                             No. CIV 08-0552  JB/LAM

SHELLEY MABERRY, d/b/a,
MABERRY CONSULTING, INC., and
MABERRY CONSULTING AND
EVALUATION SERVICES, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Application for Temporary Restraining Order and Motion for Preliminary Injunction, filed June 10, 2008 (Doc. 2)("Motion").  The Court held an evidentiary hearing on June 18, 2008 and another hearing on June 20, 2008.  Because Plaintiff Resource Associates Grant Writing and Evacuation Services, Inc. is not, on the present record, entitled to the injunctive relief it requests, the Court will deny Resource Associates' Application of Temporary Restraining Order, but will set another hearing on Resource Associates' motion for preliminary injunction to see if discovery produces more bases for granting pre-trial relief.  For the reasons stated at the hearing, and for reasons stated herein consistent with those already stated, the Court will deny the motion for a temporary restraining order ("TRO") and will not issue a preliminary injunction.  The Court will deny Resource Associates' request for a preliminary injunction without prejudice to renew that request at a future hearing.

## **FACTUAL BACKGROUND**

Resource Associates provides grant prospect research, grant proposal writing, and evaluation services to non-profit agencies, businesses, and the public.  See Plaintiff's Memorandum Brief in Support of Application for Temporary Restraining Order and Preliminary Injunction, filed June 10, 2008 (Doc. 3)("Memo. in Support").  Resource Associates identifies grant writing opportunities for its clients or prospective clients and charges a fee based on its services.  See Transcript of Hearing (taken June 18, 2008) at 46:13-17 (Rogers & Montgomery).[1]   To provide effective services, Resource Associates uses its records and experience, and identifies and retains highly qualified individuals as independent consultant/grant writers ("providers").  See id. at 46:18-47:2 (Rogers & Montgomery).

It is important to Resource Associates' business model that it retains lasting relationship with its clients and prospective clients so that Resource Associates may continue to provide services.  See id. at 49:17-18 (Montgomery).  To protect its investment and confidential information, Resource Associates requires that its providers enter into Consulting Agreements, which contain confidentiality, non-compete, and non-solicitation clauses.  See id. at 48:16-49:4 (Montgomery).

Resource Associates has dedicated years to identify and develop a list of clients and prospective clients who may need Resource Associates' services.  See Verified Complaint for Breach of Contract, Misappropriation of Trade Secrets, Breach of Duty of Good Faith and Fair Dealing, Tortious Interference with Contractual and/or Prospective Contractual Relations, Unjust Enrichment/Disgorgement of Profits, and for Temporary Restraining Order, and Preliminary and

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Permanent Injunction ¶¶ 7-8, at 2, filed June 10, 2008 ("Complaint").  Similarly, Resource Associates has identified, retained, trained, and otherwise invested in its Providers.  As a result of its efforts to generate a group of clients and service providers, Resource Associates derives economic value from its lists of clients, prospective clients, and service providers.  See id. ¶ 9, at 2-3.  Given the economic value of these lists, Resource Associates takes measures to protect this information by requiring its providers to enter into Consulting Agreements, which include confidentiality clauses, and non-compete and non-solicitation agreements.  See id . ¶¶ 12-14, at 3-4.

Maberry has been a professional grant writer since 1986.  See Defendants' Response to Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction, filed June 17, 2008 (Doc. 11)("Response"); id., Exhibit 1, Declaration of Shelley Maberry ¶ 3, at 1 (executed June 17, 2008)("Maberry Dec.").  She began her own business in 2003.  See id.  In 2004, she responded to Resource Associates' web advertisements for grant writers.  See id.

Resource Associates retained Maberry, and on March 16, 2006, Maberry signed and entered into a Consulting Agreement that Resource Associates drafted.  See Maberry Dec. ¶ 4, at 1-2; Response, Exhibit 2, Consulting Agreement at 6 (dated March 16, 2005)("Consulting Agreement").  The contract identifies Maberry as the "Consultant" and Resource Associates as the "Principal."  Consulting Agreement at 1. The Consulting Agreement states that its term commenced on March 16, 2005 and remained in effect until terminated.  See id.  The Consulting Agreement does not require any specific manner of termination and provides for certain duties "[u]pon any termination" of it.  Id.

Certain provisions of the Consulting Agreement are relevant to Resource Associates request for an injunction.  The Consulting Agreement makes some provisions for "Confidential Information"

between the Consultant (defined on page 1 of the Consulting Agreement as Maberry) and Principal

(defined on page 1 of the Consulting Agreement as Resource Associates). <u>Id.</u> at 2. The Consulting

Agreement also provides for "Non-Competition/Non-Solicitation." <u>Id.</u> at 3. The Consulting

Agreement provides:

> (a) For the purposes of this Agreement, the term "Confidential Information" means all information disclosed to, or acquired by, the Consultant, its employees or agents in connection with, and during the term of this Agreement which relates to the Principal's past, present and future research, developments, systems, operations and business activities . . . .

> (b) The Consultant acknowledges that pursuant to the performance of its obligations under this Agreement, it may acquire Confidential Information. The Consultant covenants and agrees, during the Term and following any termination of this Agreement, to hold and maintain all Confidential Information in trust and confidence for the Principal and not to use Confidential Information other than for the benefit of the Principal. The Consultant acknowledges that the Principal regularly enters into non-disclosure agreements with its clients and that the terms of these agreements are to be followed by the Consultant without exception. Except as authorized in writing by the Principal, the Consultant covenants and agrees not to disclose any Confidential Information, by publication or otherwise, to any person other than those persons whose services are contemplated for the purposes of carrying out the Agreement, provided that such persons agree in writing to be bound by, and comply with the provisions of this paragraph. The Consultant shall obtain similar covenants and agreements to those contained in this paragraph for the benefit of the Principal from each of its employees or agents who are, or may be, exposed to Confidential Information.

<u>Id.</u> The Consulting Agreement also includes a Non-Compete agreement, which provides:

> Non-Competition. The Provider acknowledges that in the course of this employment, he or she will acquire considerable knowledge about and expertise in specialized cases of the Company's business and that he or she will acquire confidential knowledge of and contact with customers and suppliers of the Company and its Affiliates. The Provider hereby agrees as follows:

> Non-Solicitation of Customers. He or she will not, for a period of two (2) years after termination of his or her contract, directly or indirectly, approach any customers or business partner of the Company or its Affiliates for the purpose of providing services substantially similar to the services provided by the company or its affiliations; and

Non- Solicitation of Providers. For a period of two (2) years after termination of his or her contract, Provider will not directly or indirectly approach, solicit, entice, or attempt to approach, solicit or entice any of the other Providers of the Company or its Affiliates to leave their contact or employment with the Company in favor of another employment.

Id. at 3.

Resource Associates contends that, shortly after her termination from Resource Associates in March of 2006, Maberry approached Resource Associates' clients to offer services substantially similar to those that Resource Associates provides.  See Memo. in Support ¶¶ 21- 25, at 5-6.  In addition, Resource Associates contends that Maberry solicited or enticed Stacey Crane, a.k.a. Stacey Balkanski, Shari Tresky, and Scott Tracy, Resource Associates providers, to work for Maberry.  See id. ¶ 23, at 6.

Maberry began providing grant writing and related services to Resource Associates on March 16, 2005. See Maberry Dec. ¶ 4, at 1-2.  Maberry was never an employee of Resource Associates. See id.  She was at all times an independent contractor.  See id.  She always provided her services to other customers in addition to Resource Associates.  See id.

At the end of 2005, Maberry told Resource Associates that she would not undertake new projects for Resource Associates because she wanted to concentrate on developing her own business. See id. ¶ 5, at 2.  Resource Associates terminated the contract in writing on March 2, 2006, citing the provision about termination.  See id;  Letter from Deborah Montgomery, Chief Associate, Resource Associates to Shelly Maberry at 1 (undated)(Exhibit 8 to the June 18, 2008 hearing).

Maberry agreed and acknowledged that the "breach of the terms and conditions of this Agreement may cause irreparable harm" to Resource Associates, which "may not be compensable by monetary damages." Verified Complaint ¶ 27, at 6.  Resource Associates also agreed and

acknowledged that breach would be "sufficient ground for the granting of appropriate injunctive relief to enforce non-competition or non-solicitation by a court of competent jurisdiction." Id. Maberry further agreed and acknowledged that "all restrictions in this Agreement are reasonable under the circumstances." Id. ¶ 26, at 6.

Resource Associates maintains that Maberry's willful conduct is causing Resource Associates damages, including, but not limited to, loss of clients and business, loss of a competitive advantage based upon its Confidential Information, its client lists, and its exclusive use of grant-writing consultants.

## PROCEDURAL BACKGROUND

Resource Associates moves the Court, pursuant to rule 65 of the Federal Rules of Civil Procedure, for the immediate entry of a TRO  and preliminary injunction restraining and enjoining Maberry from violating her Consulting Agreement with Resource Associates, and from continuing to use Resource Associates' confidential information.  See Memo. in Support at 1.  In addition to a supporting memorandum, Resource Associates' motion is further supported by the Verified Complaint, filed concurrently with the motion, and the Affidavit of Deborah Montgomery, the CEO of Resource Associates.  See Verified Compliant; Motion, Exhibit 1, Affidavit of Deborah Montgomery (taken June 4, 2008)("Montgomery Aff."). Resource Associates' counsel certifies that they have contacted the Defendants regarding the Application and to provide notice that Resource Associates would be seeking a TRO or preliminary injunction.  See Motion ¶ 6, at 2.  Resource Associates represents that it will provide a copy of all pleadings filed in this matter to the Defendants.  See id. ¶ 7, at 2. On June 17, 2008, the Defendant filed a Response to Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction. See Response

at 1.

The Court held an evidentiary hearing on Resource Associates' Application on June 18.  <u>See</u> Doc. 10.  At the June 20, 2008 hearing, Defendants' counsel represented that he would find out if Maberry has any client, customer, and provider lists, and if she is not using them, he would return them to Research Associates.  <u>See</u> Transcript of Hearing (taken June 20, 2008)("Tr.") at 8:17-9:5 (Strubel & Court).

<u>**NEW MEXICO TRADE SECRETS ACT**</u>

Pursuant to N.M.S.A. 1978, § 57-3A-2, a

"trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

<u>Id.</u>  The New Mexico Trade Secrets Act provides a variety of remedies, including injunctive relief. <u>See</u> N.M.S.A. 1978, § 57-3A-3.  Recently, the Court of Appeals of New Mexico  characterized the exemption of trade secrets  from the Inspection of Public Records Act as "another example of the strong public policy in New Mexico supporting the confidentiality of trade secrets."  <u>Pinchiera v. Allstate Ins. Co.</u>, 2007-NMCA-094, ¶ 34, 164 P.3d 982, 990, <u>cert. granted</u>, 2007-NMCERT-007.

<u>**LAW REGARDING ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF**</u>

While Resource Associates cites New Mexico law for the standards for issuance of a preliminary injunction, federal procedure law applies.  In any case, the standards for issuance of an injunction under New Mexico law and under federal law are not, for this case, materially different.

-7-

The standards under both laws are rigorous.

      **1.**      **New Mexico Law Regarding Issuance of Preliminary Injunction**.

      The issuance of a preliminary injunction is within the trial court's sound discretion.  See
LaBalbo v. Hymes, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct. App. 1993).  In determining
whether to grant injunctive relief, a trial court must consider a number of factors, and balance the
equities and hardships.  See Insure New Mexico, LLC v. McGonigle , 2000-NMCA-018, ¶ 6, 995
P.2d 1053, 1056.  The factors include:

> (1) the character of the interest to be protected; (2) the relative adequacy to the
> plaintiff of an injunction, when compared to other remedies; (3) the interests of third
> parties; (4) the practicability of granting and enforcing the order; and (5) the relative
> hardship likely to result to the defendant if granted and to the plaintiff if denied.

Insure New Mexico, LLC v. McGonigle , 2000-NMCA-018, ¶ 6, 995 P.2d at 1056.

      To be entitled to a preliminary injunction, the plaintiff must show that: (i) there is a
substantial likelihood that the plaintiff will prevail on the merits; (ii) the plaintiff will suffer
irreparable injury unless the Court grants the injunction; (iii) the threatened injury to the plaintiff
outweighs any damage the injunction might cause; and (iv) the issuance of the injunction will not
be adverse to the public's intent.  See Nat'l Trust for Historic Preservation v. City of Albuquerque,
117 N.M. 590, 595, 874 P.2d 798, 803 (Ct. App. 1994); LaBalbo v. Hymes, 115 N.M. at 318, 850
P.2d 1021.

      **2.**      **Tenth Circuit Law Regarding Preliminary Relief**.

      Injunctive relief is an "extraordinary remedy" and the movant must demonstrate a "clear and
unequivocal right" to have a request granted.  Leviton Mfg. Co., Inc. v. Nicor, Inc., No. CIV
04-0424 JB/RHS, CIV 04-1295 JB/ACT, 2007 WL 505796 (D.N.M. January 8, 2007)(Browning,
J.)(citing Greater Yellowstone Coalition v. Flowers, 321 F .3d 1250, 1256 (10th Cir. 2003)). A court

may grant injunctive relief if the moving party establishes:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1270 (10th Cir.1988).  In defining

what a movant must show to support the grant of a preliminary injunction, the Tenth Circuit has

said:

> "In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger."

Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980)(quoting Crowther v. Seaborg, 415 F.2d 437,

439 (10th Cir. 1969)).

Rule 65(b) provides that a court shall grant a TRO if it clearly appears from specific facts,

shown by affidavit or by the verified complaint, that immediate and irreparable injury, loss, or

damage will result to the applicant before notice can be served and a hearing had thereon.  See

Smotherman v. United States, 186 F. 2d 676, 677 (10th Cir. 1951).  Rule 65(b) states:

> **(b) Temporary Restraining Order.**
>
> > **(1) Issuing Without Notice.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> >
> > > **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> **(B)** the movant's attorney certifies in writing any
> efforts made to give notice and the reasons why it
> should not be required.

Fed. R. Civ. P. 65(b)(bolded in original).

"[M]ovants seeking . . . [an] injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard.  Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004)(en banc), aff'd, 546 U.S. 418 (2006).  See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F. 3d 1149, 1157 (10th Cir. 2001)("If a party seeking the injunction has met its burden on the [other] three factors, this court has stated that it may meet the showing of likelihood of success on the merits "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.")(internal quotation marks omitted); Fireworks Spectacular Inc. v. Premium Pyrotechnics Inc., 86 F.Supp 2d 1102, 1105 (D.Kan. 2001)(stating that "[t]o prevail, plaintiffs must show. . . a substantial likelihood of success on the merits.").

In Dominion Video Satellite, Inc. v. Echostar Satellite Corp., the Tenth Circuit noted that "[a] plaintiff suffers irreparable injury when the court would be unable to grant an effective remedy after a full trial because such damages would be inadequate or difficult to ascertain." 269 F.3d at 1156.  Courts have found that the loss of business customers is a harm for which monetary compensation is incapable of ascertainment and which, therefore, support the grant for a preliminary injunction.  See De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220 (1945)(stating that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same

-10-

character as that which may be granted finally"); <u>Union Nat. Life Inc, Co. v. Tillman</u>, 143 F. Supp. 2d 638, 645 (N.D. Miss 2000)("'Irreparable harm exists even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss . . . especially difficult or speculative.")(internal quotation marks omitted).

### <u>ANALYSIS</u>

Because Resource Associates has given notice to the Defendants' counsel, the Court required a hearing and gave the Defendants an opportunity to be heard before issuing any injunctive relief. After listening to the evidence at an evidentiary hearing, however, the Court is not persuaded that Resource Associates satisfies the requirements for preliminary relief or has satisfied any of the factors that the Court must examine before issuing a preliminary injunction.  Resource Associates is not entitled to a TRO.  The Court will deny Resource Associates request for the injunction without prejudice to renew at a later hearing.

**I.    THE COURT WILL REQUIRE A HEARING BEFORE ISSUING ANY INJUNCTIVE RELIEF**.

Resource Associates asks that the Court not require it to give notice to the Defendants. Specifically, Resource Associates argues that the Court should grant or issue a TRO without notice, or a preliminary injunction with notice.  For various reasons, the Court will not proceed without notice to the Defendants or without a hearing.

First, Resource Associates has given the Defendants' counsel notice, so there is no reason to dispense with notice.  Second, Resource Associates asked that the Court set a hearing within two days, and the Court has complied.   Accordingly, there is no sound reason for the Court to issue a TRO without notice and a hearing in the circumstances of this case.

II.     **THE COURT WILL NOT ISSUE A TRO.**

After carefully considering the briefing and the evidence presented at the hearing, the Court will not issue the requested injunctive relief.  The Defendants do not appear to be using, for financial gain, Resource Associates' trade-secret information.  Although there appears to be a substantial likelihood that Resource Associates will succeed on the merits on the return of certain documents, the Court does not believe that Resource Associates has demonstrated that there will be irreparable harm if the Court does not order the documents returned before trial.

A.     **THERE IS A SUBSTANTIAL LIKELIHOOD THAT RESOURCE ASSOCIATES WILL SUCCEED IN SHOWING THAT THE COURT SHOULD ISSUE INJUNCTIVE RELIEF TO ENJOIN THE DEFENDANTS FROM CONTINUING TO RETAIN RESOURCE ASSOCIATES' TRADE SECRET INFORMATION IN VIOLATION OF THE NON-COMPETE AGREEMENT.**

Resource Associates contends that there is a substantial likelihood that it will prevail in establishing a breach of the Consulting Agreement and in violation of the Trade Secrets Act, N.M.S.A. 1978, §§ 57-3A-1 to 57-3A-7.  There is at least circumstantial evidence in the record that the Defendants violated the agreement with Resource Associates in at least three ways: (i) first, by retaining two Resource Associates providers; (ii) second, by directly soliciting, enticing, and serving Resource Associates' clients; and (iii) finally, by exploiting Resource Associates' Confidential Information for the Defendant's benefits.  See Verified Complaint ¶¶ 22-25, at 6.  There is evidence that these acts have occurred within the two-year time frame for which the non-compete agreement was in effect.  See id ¶ 22, at 6.  There is evidence that some occurred on the heels of Maberry's termination from Resource Associates.  See Memo. in Support at 5.

It is unlikely, however that the Court will enforce future compliance with some terms of a contract that have expired by the language of the terms themselves.  It is unlikely that the Court will

revive all the contract, extend its terms indefinitely, or impose upon all Defendant's obligations that did not exist before or that no party contemplated.  The Court agrees with the Defendants that the nonsolicitation of customers and nonsolicitation of providers have expired under the Consulting Agreement.  The Court is reluctant to extend those prohibitions beyond the two-year time frame.

The Court does not agree, however, that all the obligations that Maberry may have had under her contract with Resource Associates ended, at latest, on March 2, 2008.  The Court reads clause (b) at the top of page two of the Consulting Agreement broadly.  <u>See</u> Consulting Agreement at 2 ("The Consultant covenants and agrees, during the Term and following any termination of this Agreement, to hold and maintain all Confidential Information in trust and confidence for the Principal and not to use Confidential Information other than for the benefit of the Principal.").  The Court believes that this clause may prohibit Maberry from using any information she obtained from Resource Associates.

Nevertheless, the Court does not believe that Resource Associates has shown, clearly and unequivocally, that there is a substantial likelihood of success for Resource Associates on the breach of this term.  In the present record, the Defendants have submitted sworn testimony that denies that they used confidential information for their benefit.  On the record before the Court, the evidence is, at most, evenly at equipoise, and Resource Associates has not met its burden of clearly and unequivocally showing that there is a substantial likelihood of success on the merits of its claim that the Defendants misused Resource Associates' confidential information.

In contrast, there is strong evidence that the Defendants are holding Resource Associates' documents in violation of the Consulting Agreement.  The Defendants have been unable to produce much, if any, evidence to dispel this inference that they told Resource Associates.  On this portion

of its claim, Resource Associates has shown that there is a substantial likelihood of success for Resource Associates.

**B.     RESOURCE ASSOCIATES HAS NOT DEMONSTRATED THAT IT WILL BE IRREPARABLY HARMED IF THE COURT DOES NOT ISSUE A TRO**.

Resource Associates contends that it will suffer immediate and irreparable injury, loss, and damages if the Court does not issue a restraining order and preliminary injunction.  See Verified Complaint ¶ 27, at 6.  There is evidence that continued use of Resource Associates' client list and service providers has provided and will continue to create a windfall valued in the hundred thousands of dollars to the Defendant.  Allowing the Defendants to misappropriate the work product that Resource Associates established could lead to serious damages of irreparable harm and may harm Resource Associates in a manner not readily remedied by money damages. See id. ¶ 28, at 6. Nevertheless, Resource Associates has failed to clearly and unequivocally show that it will be irreparably harmed if the Court does not grant the injunction.

The damage that the threatened actions would have on Resource Associates cannot be easily measured, if at all, on the record before the Court.  See Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 356, 355 (10th Cir. 1986)(stating that "[i]n federal courts, the moving party must show irreparable injury in order to obtain a preliminary injunction. . . .Thus, [the movant] must show not only that it is injured by the failure to issue the preliminary injunction, but also that damages are not adequate to compensate that injury.")(internal citations omitted).  While such a conclusion often supports a finding of immediate and irreparable injury, here the record does not support, clearly and unequivocally, any injury.  Resource Associates is a much larger company than the Defendants' operation, and Resource Associates has suspected since June of 2006, that the Defendants were using their former relationship with Resource Associates to create

-14-

business.  Yet Resource Associates did not think that some activity in 2006 was irreparable and tolerated the Defendants' actions at that time.  The only think that changed from 2006 to 2008 is that Resource Associates decided that the value of lost business had increased.  If the harm was not irreparable in 2006, it should not be irreparable in 2008 merely because Resource Associates suspects that the harm is greater.

Moreover, the Court is not convinced that the damages that Resource Associates has allegedly suffered or is suffering cannot be reasonably calculated when discovery is completed. After discovery, and after if is determined what, if any, business the Defendants lured away, it will be more evident how much money the Defendants made at Resource Associates' expense.  While it is difficult on the current record to determine what, if any, damages Resource Associates has incurred, or how much these damages are -- cloudy factors that counsel against injunctive relief in this case -- the Court believes that the picture will be much clearer after some discovery.

As to the Defendants' retention of Resource Associates' documents, Resource Associates has not shown that it is being harmed at all, much less immediately or irreparably, by the Defendants continuing to hold some of Resource Associates' documents.

It appears that Resource Associates did not seem to care about the Defendants' possession of confidential information until very recently, so it is difficult to believe that there is irreparable damage from the Defendants having the information.  The Court is also not convinced that the damages from the Defendants' retention of documents are so harmful that this matter cannot be resolved through the discovery process to assess exactly what has occurred.  Accordingly, Resource Associates has not made a clear and unequivocal showing of irreparable damages.

C.      THE EQUITIES BALANCE AGAINST AN INJUNCTION BECAUSE  THE INUNCTION WILL UPSET THE STATUS QUO.

Balancing the equities, issuance of Resource Associates' requested injunction may hamper the Defendants' business; denying the request will maintain the status quo.  The injunction seeks to impose obligations on the Defendants that at one time may have existed, but have not heretofore been enforced, or never existed in the form that Resource Associates advances, or have expired. Moreover, the Defendants assert that they would suffer legally cognizable harm if they Court enjoins them.

Research Associates contends that an injunction would force the Defendants to comply with her contractual obligations, and with state and common-law requirements, that she refrain from exploiting Resource Associates' Confidential Information and trade secrets to her benefit. See Autoskill Inc. v. Nat'l Educ. Support SVS, Inc, 994 F.2d 1476, 1498 (10th Cir.1993)(explaining that the movant's burden is to demonstrate "the harm it would sustain without an injunction outweighed the potential harm of an injunction to [the defendant]."). Resource Associates contends that entry of a restraining order will have minimal prejudicial impact on the Defendants, because the Defendants remain free to continue business, restrained only from violating its contract and obligations to Resource Associates under the New Mexico Trade Secrets Act.  Resource Associates argues that entry of a restraining order and preliminary injunction will have no unwarranted prejudicial impact on the Defendants, because it would do no more than honor the Defendants' contractual requirements, whereas failure to restrain the Defendants from wrongfully interfering with Resource Associates' business with result in continuing and irreparable harm.

The Court believes, however, that it is premature to shift business back to Resource Associates or shut down the Defendants' business.  The Court believes that the harm, if any, is

manageable and can be compensated through the normal judicial process rather than resolved through a TRO. To require the Defendants to give a significant share of its business because they are former clients of Resource Associates, or to require providers to cease doing business with the Defendants because they are former providers for Resource Associates, would not only impose undue pretrial burdens on the Defendants, but on innocent clients and perhaps innocent providers. The request that Resource Associates seek as relief is almost the ultimate relief it would seek at the end of trial, and unduly shortcuts the trial process and gives Resource Associates the "long bomb scare" without the running through safeguards of the litigation process.

### D. THERE ARE COMPETING PUBLIC INTERESTS INVOLVED.

The final factor that the Court must consider in evaluating a request for a temporary or preliminary injunction order is the public interest. Resource Associates contends that entry of the TRO and preliminary injunction will serve the public interest by preserving Resource Associates' confidential and trade-secret information, and by honoring the sanctity of contracts. Resource Associates argues that precluding disclosure would benefit not only Resource Associates, but would also honor the New Mexico public policy protecting trade secrets and the enforcing of contracts by their terms, which policies are intended to prevent harm to individuals and businesses.

New Mexico has a strong public interest in protecting the confidential and proprietary nature of Resource Associates' client-and service- provider lists. New Mexico also, however, has a strong public interest in a court not altering the contract that the parties have freely made between them and interfering in the freedom to contract. It would be adverse to the public interest for the Court to enforce terms the parties have not thought important for many years or contractual obligations that the parties never made.

There are also strong public policies in fostering competition by allowing companies to break off and start new companies. The Court believes that there are competing public interests at stake and that the public interest in protecting confidential and proprietary information does not necessarily outweigh the public interest in freedom to contract and fostering competition. Thus, this factor does not favor the Court granting Resource Associates a TRO.

III.     **THE COURT WILL NOT ISSUE A PRELIMINARY INJUNCTION AT THIS TIME.**

The Defendants argue that Resource Associates cannot show that it will be irreparably harmed and that there is no likelihood that Resource Associates' will prevail on the merits of its class against the Defendants. The Court does not believe that the factors, at this time, favor granting Resource Associates' request for a preliminary injunction. The Court acknowledges, however, that the balance of hardships may change over the course of this litigation, particularly after Resource Associates undertakes some discovery. Thus, the Court will deny Resource Associates' motion for a preliminary junction without prejudice to Resource Associates renewing its motion for preliminary injunction at a later time on perhaps a better record.

**IT IS ORDERED** that the Plaintiff's Application of Temporary Restraining Order and Preliminary Injunction is denied. The Court denies the Plaintiff's request for a preliminary injunction without prejudice to it renewing its motion for a preliminary injunction at a later time.

_____
UNITED STATES DISTRICT JUDGE

-18-

*Counsel:*

Patrick Joseph Rogers
Lorena Olmos de Madalena
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

David A. Streubel
Streubel, Kochersberger & Mortimer LLC
Albuquerque, New Mexico

 *Attorneys for the Defendants*