# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT WRITING
AND EVALUATION SERVICES, LLC,

       Plaintiff and Counterdefendant,

vs.                                                                    No. CIV 08-0552 JB/LAM

SHELLEY MABERRY, d/b/a,
MABERRY CONSULTING, INC., and
MABERRY CONSULTING AND
EVALUATION SERVICES, LLC,

       Defendants, Counterclaimants,
        and Crossclaimants,

vs.

DEBORAH MONTGOMERY,

       Crossclaim Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Letter from Patrick J. Rogers to the Court, dated December 19, 2008 and filed January 28, 2009 (Doc. 142); (ii) the Letter from Lorena Olmos de Madalena to the Court, dated January 12, 2009 and filed January 28, 2009 (Doc. 143); and (iii) the Letter from Patrick Rogers to the Court, dated January 28, 2009 and filed January 29, 2009 (Doc. 146). The Court held a hearing on January 28, 2009. The primary issues are: (i) whether the Defendants should produce their client lists; (ii) whether the Defendants should produce financial information about all of their clients; (iii) if more information is required, how quickly should the new information be provided; (iv) whether the Court should compel the production of documents from a witness located in Idaho; (v) whether the Defendants may disclose a damages expert; (vi)

whether the Court should require the parties to mediate this dispute and whether the Court should appoint a mediator if the parties cannot agree on one; and (vii) whether the Court should require the Defendants to produce their internal forms and templates. The Court will not require the Defendants to produce another list of all of their clients, but will require the Defendants to provide the Bates numbers for the client lists that they have already produced.  The Court will require the Defendants to provide all requested information about the clients that Defendant Shelley Maberry serviced while at Plaintiff Resource Associates and about all common clients.  The Defendants will provide the information required within ten days of this order.  The Court will not require any witness outside the jurisdiction to produce documents.  The Defendants may disclose a damages expert within fifteen days of the date of this order.  The Court will also allow the Defendants to disclose Peter Underwood by amending their Initial Disclosure and by amending their Answer to Interrogatory No. 14 by the end of discovery, on January 30, 2009.  The Court will not order a mediation or impose a mediator, but if the parties agree to mediate and cannot agree on a mediator, the Court will select one for the mediation.

## PROCEDURAL BACKGROUND

In its letters to the Court, Resource Associates raises various concerns about discovery. Resource Associates asserts that the Defendants have refused to supply responsive answers to interrogatories and requests for production.  Aside from interrogatories and requests for production, Resource Associates, through its letters, requests the Court's assistance in other discovery matters. Resource Associates also wishes for the Court to assist in setting up a mediation.

### 1.      Background of Discovery Dispute.

Early in this litigation, the Defendants demanded that Resource Associates provide detailed supplementation to its discovery responses.  Resource Associates contends that the Defendants have

failed to meet their obligations in this regard.  Resource Associates maintains that the Defendants have failed to produce a client list that will identify the Defendants' clients.  Resource Associates also contends that, without a comprehensive list of the corresponding contracts and correspondence, it will not be possible to calculate the compensation improperly diverted to the Defendants.

  2. **Deposition of Shelley Maberry**.

  At her first deposition, Maberry indicated that she had reviewed her e-mails to determine whether they were responsive to the requests for production.  She did not copy any, however, because she apparently determined none were responsive.

> Q. (By Mr. Rogers) Okay.  And to respond to the Request for Production you also reviewed your e-mails, excuse me, that were not hard copied?
>
> A. I did review the e-mails.
>
> Q. And did you copy any of those because they were responsive to the Request For Production?
>
> A. I do not believe so.

Deposition of Shelley Maberry at 9:4-12 (taken September 10, 2008)("Maberry Depo.").

  Maberry also explained the role of Stacey Balkanski in her organization:

> Q. And you have Work-For-Hire Agreements with approximately 20 people?
>
> A.  I have not counted, but that's probably a fair estimate.
>
> Q. And is it your testimony that you have no correspondence with any of those 20 people prior to the Work-For-Hire Agreement?
>
> A. It's not my role within the business to execute that part of the system. I do not have –
>
> Q. Were you finished, Miss Mayberry?
>
> A. Yes.

Q.      Whose role is it to execute that part of your business?

A.      Stacy Balkanski.

Q.      Did you ask Miss Balkanski to look in her records for documents related to Maberry Consulting?

A.      No. I pulled everything that I had that was on site.

Q.      So, is it your testimony that you do not have copies of any correspondence in e-mail form or otherwise with any of the 20 or more people that Have Work-For-Hire Agreements with your company?

A.      Ask the question again, please.

Q.      Is it your testimony that you do not have copies of any correspondence, including e-mails, with any of the 20 or more persons who have Work-For-Hire Agreements with your company?

A.      No.

Q.      So, you do have copies of correspondence with the persons who have signed Work-For-Hire Agreements that you did not produce?

A.      Yes.

Q.      Was there a reason that you did not produce the documents that were requested under the Request For Production?

A.      Those items, the e-mails that I have are from the individual providers through the course of preparing the work that they were hired for under that Work-For-Hire Agreement.

Id. at 9:23-11:15.

Q.      So, Stacey Balkanski is responsible for keeping some records of Maberry Consulting?

A.      Yes.

Q.      What records does she keep?

A.      Stacey would keep records related to clients calls, she would keep records, at least in a short term, regarding making grant writer

-4-

assignments on projects.  I do not anticipate that Stacey keeps paper records at her location.  All the files are filed at our offices.

Q.      Do you know one way or the other if she keeps hard copies of records of Maberry Consulting?

A.      I really don't know.

Q.      And so do I understand, then, her records are electronic?

A.      I would anticipate that the bulk are electronic.

Q.      And so you don't get copies of client phone call records from Miss Balkanski?

A.      No.

Q.      You don't get copies of grant writer assignments from Miss Balkanski?

A.      I know about the grant writer assignment when that Work-For-Hire Agreement is faxed into our office.

Q.      So, prior to receipt of the Work-For-Hire Agreement you do not receive any correspondence from Miss Balkanski or the provider concerning that possible arrangement?

A.      I am copied on the e-mail that contains that attachment that goes out to the writer.

Q.      Where are those documents the, the e-mail that transmits the Work-For- Hire Agreement to the provider?

A.      It is not something that I standardly keep.

Q.      Do you have any copies in your records of that transmittal, Miss MABERRY, or any of the 20 or more Work-For-Hire Agreements that you have produced?

A.      I am not sure.

Q.      Did you look?

A.      No, I can't say that I did.

Q.      Was there any reason you didn't ask Miss Balkanski to review her business records of Maberry Consulting in order to respond to the Request For Production that you received?

A.      The primary reason is because I tried to handle everything myself to minimize the time involvement of my other staff, and I felt that we had demonstrated what we had.

Id. at 13:6-15:8.

Q.      Have you ever received a call from a potential provider interested in providing services to Maberry Consulting?

A.      Oh, sure.

Q.      What is your procedure when you receive a call?

A.      When we get a call the procedure is to respond with an e-mail requesting information from that writer, if it's someone that we're not familiar with, or someone that wasn't referred. We inquire of their experience, their history, we ask them to send us a writing sample, and once those items are received, then, and if they look satisfactory, and their experiences are in line with the type of work we do, then Stacey and I do a conference call with them, and go through kind of a question and answer format with them. If we are satisfied by the end of the conversation that we think that they may be a fit for us, then we provide them with a draft copy of the Work-For-Hire Agreement so that they can see how it is that we do our assignmenting, and we also provide them with a W-Nine Form, and explain to them that we would have to have that on file in order to begin any project. That's pretty much it.

Q.      Is it a form letter that you send to these persons who may be interested in providing services to Maberry Consulting?

A.      No.

Q.      So, each time that you request information from a potential provider, a new transmittal letter is drafted and sent?

A.      It is an e-mail.

Q.      An e-mail. Is it a form e-mail that you use?

A.      No. It's just a quick e-mail.

-6-

Q.    And you don't have any copies of those e-mails on your computer that you use for your business at Maberry Consulting:

A.    I may have.  That's not something that I looked for.

Id. at 16:9-17:25.

Q.    And there are no written documents reflecting your various agreements with Miss Balkanski?

       MR. STREUBEL:    Objection, asked and answered.   You can answer.

A.    I have no contract with Stacey.  There's nothing in writing that defines her work day, defines what she does.  We have a gentlewoman's agreement.

Q.    (By Mr. Rogers) Is there anything in writing concerning the amount she is to receive from Maberry Consulting?

A.    Last December, January, we a put in writing what the payment, monthly payment, monthly payments would be to her, and how the bonus percentage would be.  But there are no – it is simply that. There are no work descriptions, or anything of that nature on that piece of paper.

Q.    What's the date of that, of the signature on that piece of paper?

A.    I really don't know.  There's either going to be December of '07, or January of '08.  Somewhere in that two-month vicinity.

Q.    Why in December or January of '08 did you or Miss Balkanski determine that a gentlewoman's oral agreement was not sufficient, and a  written signed document was necessary?

A.    Stacey had asked for something that outlined, and I really don't – I really don't know why she asked for it.  I can only speculate.

Q.    Is there any reason that that agreement wasn't produced with the documents you located and produced responsive to the Request for Production?

A.    It didn't even cross my mind.

-7-

Id. at 21:12-21.  In light of Maberry's deposition testimony, Resource Associates requests answers and documents it believes the Defendants' have not produced.

     3.    **Client Lists and Financial Information.**

In a prior hearing, the Court was apprised of the inconsistent testimony by Maberry and Stacy Balkanski regarding the existence of documents responsive to various requests for production and subpoenas on behalf of Resource Associates.  See Federal Digital Tape Recorder at 2:28:48-2:30:39 (taken October 28, 2008)(Rogers).  Resource Associates contends that the testimony regarding the documents is problematic in that there are numerous records that exist that have not been produced.

Resource Associates represents that testimony has disclosed that the Defendants stole clients while working for Resource Associates.  Accordingly, the most important issue appears to be that Resource Associates contends that the Defendants have failed to produce a client list that identifies the Defendants' clients.  The Defendants represent that they long ago provided a complete list of all of its clients.  The Defendants state that there are nine clients that are common clients with Resource Associates and that they have also provided a list of all other clients.

The Defendants also represent that the Defendants long ago produced the income they received from the common clients.  The Defendants maintain their objection to producing further information about the uncommon clients.  Nevertheless, the Defendants report that, during the depositions of the Defendants during the week of January 20-23, the Defendants produced information about all income they received from all clients and when they received that income.  Therefore, according to the Defendants, Resource Associates now has a complete list of all of the Defendants' clients, the income Defendants received from each of those clients, and when the Defendants received that income.

In any case, in a letter dated November 26, 2008, Resource Associates brought certain deposition testimony of Maberry and of Balkanski to the attention of the Defendants' counsel. Resource Associates has made numerous other requests for supplementation.

Resource Associates ultimately drafted additional requests for production and interrogatories specifically targeting the records necessary to this litigation.  On November 26, 2008, Resource Associates served the new discovery on the Defendants. Many of the new additional requests cited deposition testimony that noted the existence of records that had not been provided.

Resource Associates contends that the responses which the Defendants have provided are deficient and state only that they have already produced all the documents that were responsive.  See Maberry Consulting and Evaluation Services, LLC Responses to Resource Associates' Second Set of Discovery at 4.  The Defendants do not identify any Bates numbers of the documents that they contend they have produced.

Resource Associates has attached deposition testimony of Maberry and Balkanski that Resource Associates contends illustrates the problems of the Defendants' failure to cooperate in discovery.  See Maberry Depo. at 9-11; 13:1-17:25; 21:12-22:21; 27:18-34:18; 36:23-41:10; 47:1-50:15; 67:7-68:17; 74:11-78:14; 87:1-88:1; 164:1-169:8; 181:1-182:11; 201:3-34; Deposition of Stacey Balkanski at 55:1-25; 61:4-25; 136:5-21; 149:1-24 (taken October 2, 2008)("Balkanski Depo.").  During the deposition of Balkanski, Resource Associates' counsel asked Defendants' counsel, Mr. STREUBEL, to confirm whether they would be providing responsive materials.  He refused to participate in any conversation regarding discovery.  See Balkanski Depo. at 61:20-25.

To date, there has been no request for an extension of time to answer or otherwise to respond to this discovery, nor have the Defendants answered or otherwise responded to this discovery.

Indeed, Resource Associates represents that there has been no conversation about a request for an extension.  Resource Associates also represents that it does not know the reason why the Defendants have not provided any response.  Resource Associates further represents that it has brought this issue to counsel's attention on numerous occasions.

In addition to the requests for production and depositions, Resource Associates' counsel has also sent various correspondence to Mr. Streubel asking him to provide responsive materials.  See Electronic Mail from Patrick J. Rogers to David Streubel, dated January 8, 2009; Electronic Mail from Patrick J. Rogers to David Streubel, dated January 7, 2009; Electronic Mail from Patrick J. Rogers to David Streubel, dated December 31, 2008; Electronic Mail from Lorena Olmos de Madalena to David Streubel, dated December 12, 2008; Letter from Patrick J. Rogers to David A Streubel, dated November 26, 2008.  Resource Associates states, however, that the Defendants have refused to provide the requested materials.  Throughout this period of time, the Defendants' counsel repeatedly stated that they have "provided all responsive documents."

Ms. Olmos de Madalena represents that the opposing counsel have not been able to work out certain matters.  Resource Associates have offered to have a conference call with Mr. Streubel, to no avail.  For this reason, Resource Associates seeks the Court's intervention in resolving these discovery issues.

### 4.    **E-Mails.**

Resource Associates contends that the Defendants failed to produce e-mails for the years 2004-07 and, in fact, produced few documents of any kind.  Resource Associates argues that the most important email items it is seeking are materials sent to potential and actual clients.  Resource Associates also seeks marketing information, including Maberry's resume.

### 5.    **Don Davis Deposition and Document Production.**

Davis is a former grant writer with Resource Associates who now has a relationship with the Defendants. Resource Associates states that, before his deposition, which the Defendants noticed, Davis eluded process servers for a subpoena for documents by Resource Associates. The Defendants contend that Resource Associates first generated a defective subpoena issued from this Court and perhaps attempted to serve it on Davis in Idaho.

Resource Associates was not successful in serving Davis, and they then attempted to avoid Davis' deposition. The Court ordered the deposition to proceed, and Resource Associates served Davis with a valid subpoena duces tecum at his deposition. The Defendants represent that they understand that Davis has objected to the subpoena.

In any case, Davis was served, and at his deposition, Mr. Streubel represented him. Davis has written to indicate that he will not be producing documents pursuant to the subpoena. When Resource Associates contacted Mr. Streubel, Davis' counsel at the deposition, Mr. Streubel indicated that he does not represent Davis "this minute." Resource Associates states that it is attempting to resolve Davis' refusal to provide documents pursuant to an appropriately served subpoena or otherwise come to an agreement that the Defendants will not attempt to use his deposition as evidence in this case. Mr. Streubel has refused to answer.

6.     **Resource Associates' Letters to the Court.**

On December 19, 2008, Pat Rogers, one of Resource Associates' counsel, wrote the Court, explaining the numerous alleged deficiencies with the Defendants' discovery responses and asking for the Court's assistance addressing the Defendants' alleged failure to provide discovery responses. Resource Associates states that it would appreciate the Court's attention at the earliest opportunity.

With regard to the discovery disputes, Mr. Streubel did not immediately respond to the letter Mr. Rogers wrote the Court on December 19, 2008. On January 12, 2009, Ms. Olmos de Madalena

-11-

wrote again, requesting the Court's involvement to move this case along. Resource Associates states that, as the Defendants' counsel has not responded to Mr. Rogers' December 19, 2008 letter, it cannot evaluate the scope of missing documentation and the Defendants' refusal to provide responses.

Ms. Olmos de Madalena states in the second letter to the Court that, in addition to the issues raised in Mr. Rogers' December 19, 2008 letter, there are other matters that Resource Associates have attempted, in vain, to resolve with opposing counsel. She states that Resource Associates had requested Mr. Streubel's response a number of times and, as evidence, attached electronic-mail correspondence. She further states that Resource Associates has attempted, in vain, to resolve these issues with opposing counsel. She also requests a conference with the Court at the earliest opportunity. She asks the Court to attempt to help resolve these matters at the Court's earliest convenience.

Resource Associates contends that these discovery matters are especially important considering that the depositions were scheduled for Wednesday, January 14, 2009 and for the week of January 20-23, 2009. Moreover, the cut-off date for discovery, pursuant to an extension by the Court, is January 30, 2009.

Resource Associates has asked Mr. Streubel to provide his preference for a mediator, and Resource Associates contends that Mr. Streubel has not responded. Mr. Streubel represents that he has discussed with Resource Associates' counsel his thoughts regarding mediation.

On January 19, 2009, Mr. Streubel wrote a letter to the Court on behalf of the Defendants in response to the December 19, 2008, and January 12, 2009 letters to the Court from Resource Associates' counsel. On another matter, the Defendants state that they will designate an expert witness regarding their damages resulting from Resource Associates' and Deborah Montgomery's

malicious abuse of process. The expert's opinion will consider the costs incurred by the Defendants to defend this litigation, the merits of Resource Associates' case, and the manner in which they chose to litigate this case. The Defendants state that their expert's opinion cannot yet be complete because the litigation is ongoing.

The Defendants state that they have not designated an expert before this date because the Court orally vacated all pretrial deadlines – including the November 1, 2008 deadline for the Defendants to designate experts – in a discovery conference on October 28, 2008. The Court confirmed this ruling in a November 13, 2008 Minute Order. See Doc. 102.

On the day of the hearing, Resource Associates sent another letter to the Court. See Letter from Patrick K. Rogers to the Court, dated January 28, 2009. In that letter, Resource Associates argued that the Defendants have ignored repeated requests to produce their internal templates and forms. Resource Associates has a claim for misuse of its forms and templates, and believes it needs access to Defendants' internal forms and templates to support its claim.

Resource Associates also noted that they oppose opening discovery and allowing the Defendants to name an expert. Resource Associates also opposes the late identification of witnesses – particularly Underwood. According to Resource Associates, Underwood had represented that he had not been asked to testify at the New Mexico trial. He allegedly also informed counsel for Resource Associates that he was not anticipating traveling to New Mexico for the trial, but "'like climbing Kilimanjaro or swimming the English Channel,' he would not rule it out." Letter from Patrick K. Rogers to the Court, dated January 28, 2009 at 3.

### 7.     Interrogatories and Requests for Production not Discussed at the Hearing.

At the hearing, the Court and the parties discussed many of the interrogatories and requests for production that Resource Associates raised in its Letter to the Court dated December, 19, 2008.

Some of the interrogatories raised in the Letter to the Court, however, were not discussed or ruled on at the hearing.  Those interrogatories and requests for production, along with the answers and responses, which the Court did not rule on at the hearing, provide helpful context in understanding the various discovery disputes that are the subject of this Memorandum Opinion and Order.

**INTERROGATORY NO. 10:**

Identify all grants Defendants have written for Resource Associates clients and for each provide:

a.      the client name;

b.      name of grant and grant writer(s);

c.      amount written for and any award,

d.      any corresponding evaluation service provided and the evaluator.

e.      all fees recovered or pending as a result of that assignment and the total fees from each client, by assignment or project.

f.      the name of any vendor involved in the assignment or project and any proceeds paid or owing to that vendor.

h.      identify any and all related documents whether electronic or in paper form.

**Answer:** Objection.  Subpart h. of this interrogatory is not designed to reveal information that is discoverable under Federal Rules of Civil Procedure 26(b)(1).  Furthermore, the burden and expense of the proposed discovery outweighs its likely benefit considering  the needs of the case.  Subject to this objection, see the document provided with this response (Confidential Maberry 000011-000016).

**INTERROGATORY NO. 11:**

State in complete detail all items of damage or loss suffered by you as a result of the alleged acts or omissions of Resource Associates or Deborah Montgomery, and include for each item the amount of loss or damages, how you calculated the alleged loss or damage, and what the loss or damage consists of or represents (i.e., lost sales, profits, etc.).

**Answer:** To date, defendant's damages consist of attorney fees and costs they have paid, other expenses incurred litigating this matter, the value of the time defendant's

-14-

personnel have expended in litigating this matter, the lost opportunity value of these resources, and actual or nominal damages resulting from the defamation by Resource Associates and Deborah Montgomery as defendant alleges in its counterclaim. These damages continue to accrue and have not yet been determined.

**INTERROGATORY NO. 12:**

Describe the full factual and legal bases for all denials and affirmative defenses to plaintiff's claims against you.

**Answer:**  Discovery is continuing and defendant will supplement this answer after the completion of discovery.

**REQUEST FOR PRODUCTION NO. 8:**

Produce any and all communications between Defendants and any staff, grant writers and/or other service providers of defendants.

**Response:** Objection.  This interrogatory seeks information that is not discoverable under Federal Rule of Civil Procedure 26(b)(1).  It attempts to cause defendant to reveal and provide all communications on any subject, whether or not such communications may have had anything to do with this litigation.  Such a request is generally unreasonable and also is unreasonably cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C).  Furthermore, the burden and expense of the proposed discovery outweighs its likely benefit considering the needs of the case.

**REQUEST FOR PRODUCTION NO. 9:**

Produce the contents of any and all files (be they electronic or paper files) Maberry was referencing in pages 8 and 9 of her deposition testimony.

**Response**: Responsive documents have been produced.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all records (be they electronic or paper files) related to or regarding client calls as testified to on page 13 of the deposition of Shelley Maberry, and also testified about on page 90 of the deposition of Stacey Balkanski.

**Response:** No responsive documents exist.

**REQUEST FOR PRODUCTION NO. 11:**

Produce complete and accurate copies of the entire contents of individual files (be

they electronic or paper files) maintained for each grant writers or providers as testified about in pages 29-34 of the deposition of Shelley Maberry.

**Response:** Objection.  This interrogatory information [sic] that is not discoverable under Federal Rule of Civil Procedure 26(b)(1).

### REQUEST FOR PRODUCTION NO. 13:

Produce complete and accurate copies of all documents reviewed, identified or referred to in responding to the proceeding interrogatories.

**Response:** Objection.  This interrogatory is not designed to reveal information that is discoverable under Federal Rules of Civil Procedure 26(b)(1).  Defendant has responded to the specific requests for information herein.  To cause defendant to reveal and provide all other information that was "reviewed, considered or consulted" in making these responses, whether or not such information may have had any import in the response, is unreasonably cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C).  Furthermore, plaintiff has had ample opportunity to obtain the exact information it seeks and the burden and expense of the proposed discovery outweighs its likely benefit considering the needs of the case.  Similarly, this request seeks information protected by the attorney-client privilege and work product doctrine.  The burden and expense of providing a privilege index far outweighs the benefit of this "fishing expedition" request.

### REQUEST FOR PRODUCTION NO. 14:

Produce a full and accurate copy of the grant writer list/spreadsheet as described on page 111 of the deposition of Stacey Balkanski, in its original form (i.e. in electronic format as kept in the regular course of business).

**Response:** Objection.  Defendant has provided the identity of all grant writers on the grant writer list/spreadsheet.  The actual list is not discoverable under Federal Rule of Civil Procedure 26(b)(1).  Furthermore, production of the list is unreasonably cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C).

### REQUEST FOR PRODUCTION NO. 15:

Produce full and accurate copies of materials provided to prospective clients including but not limited to brochures, price lists, and reference lists, as described by Stacey Balkanski on pages 79, and 88-89 of her deposition.

**Response:**  All responsive documents have been produced.

### REQUEST FOR PRODUCTION NO. 16:

-16-

Produce a full and accurate copy of the universal bid list as described by Stacey Balkanski in pages 142-44 of her deposition, in its original form (ie. in electronic format as kept in the regular course of business).

**Response:**  See www.grant-a-gram.com.

## ANALYSIS

The Court has been indulgent in dealing with the frustrating discovery problems in this case. Nevertheless, the Court has carefully considered the current discovery disputes and issues that the letters raise.  The Defendants have not completely complied with their discovery obligations. Nevertheless, the Court will not order the Defendants to provide every responsive record.

### I.   THE PARTIES HAVE BEEN UNABLE TO RESOLVE THESE DISCOVERY DISPUTES WITHOUT COURT INTERVENTION.

As the correspondence submitted evidences, the parties have attempted to resolve their issues.  The Court is concerned about the tone of some of the exchanges at the depositions.  The Court does not believe that the parties will be able to resolve their discovery disputes without Court intervention.  Accordingly, the Court will proceed to address the issues that the parties cannot resolve.

### II.   THE COURT WILL NOT REQUIRE THE DEFENDANTS TO PRODUCE FURTHER DOCUMENTS ABOUT ITS CLIENTS, BUT WILL REQUIRE THE DEFENDANTS TO IDENTIFY WITH SPECIFICITY THE DOCUMENTS IT HAS ALREADY PRODUCED.

Resource Associates' primary complaint is that the Defendants have not produced a client list that identifies all of the Defendants' clients.  Resource Associates maintains that, without a comprehensive list of the corresponding contracts and correspondence, it will not be possible to calculate the compensation improperly diverted to the Defendants.  Resource Associates states that it does not have the Defendants' client list that includes all clients and those clients' contact information and addresses.

-17-

Regarding Resource Associates' first letter, based on the Defendants' representations, Resource Associates' complaints about the Defendants' production of client lists appears to be largely unfounded and, in any case, moot. The Defendants have represented that they have produced lists of all their clients. The Court must be able to rely upon the representations of counsel. The Court will thus not require the Defendants to provide the client lists for Maberry.

The Court will, however, require the Defendants to identify with specificity, under oath, the documents that contain a list of all their clients. The Defendants should identify the Bates numbers for those documents. The Defendants must also provide contact information and addresses for all of their clients. The contact information and addresses will be designated as attorneys eyes only.

## III. THE COURT WILL NOT REQUIRE ALL OF THE REQUESTED FINANCIAL INFORMATION FROM THE DEFENDANTS, BUT THE DEFENDANTS MUST PROVIDE THE IDENTIFICATION INFORMATION FOR THE INFORMATION <u>ALREADY PRODUCED.</u>

Resource Associates states that it also does not have all invoices and all financial records, and/or otherwise lacks complete responses to interrogatories, which would allow for the Defendants' position on certain matters to be pinned down. Specifically, Resource Associates argues that it is entitled to know the amounts of compensation received from clients of Resource Associates by Maberry while she was still working for Resource Associates. Resource Associates also states that, in addition to those records, it is entitled to be able to ascertain all monies paid to the Defendants in the two years since Maberry's departure from Resource Associates in March of 2006, including any fees generated to the Defendants as a result of successfully awarded grants.

Resource Associates maintains that, despite the Defendants' representations, the Defendants cannot have provided all responsive documents. Resource Associates states that it needs these documents so that it may determine its damages, and identify any additional parties that should be

-18-

deposed or from whom discovery should be sought before the expiration of discovery. Resource Associates contends that all supporting documentation should be provided immediately.

While the Court believes that Resource Associates is entitled to some of the financial information that it seeks, the Court will not order the Defendants to provide every responsive financial record in its file. The Court will require the Defendants to provide all requested information about the clients that Maberry serviced while at Resource Associates and about all common clients as set forth below in its discussion of the response for Request for Production No. 12. If the Defendants have already produced that information, they must specifically identify, under oath, the documents that contain this information. The Defendants need not provide further information about other clients. The Court will set a deadline of ten days to complete this production.

## IV.   THE COURT WILL OVERRULE SOME OF THE DEFENDANTS' OBJECTIONS TO THE INTERROGATORIES AND REQUESTS FOR PRODUCTION.

Resource Associates argues that the Defendants refuse to respond to its interrogatories and requests for production in an appropriate manner. The Defendants have objected to the interrogatories and requests for production at issue. The parties have reached an impasse. The Court will therefore give rulings on the interrogatories and requests for production that remain at issue.

While the correspondence is not entirely clear, at the hearing, Mr. Rogers made clear that there are three interrogatories and two requests for production that remain in issue. See Maberry Consulting and Evaluation Services, LLC Responses to Resource Associates' Second Set of Discovery.

**INTERROGATORY NO. 9:**

Identify all projects or assignments completed or assigned to Stacey Balkanski, or any other former or current Resource Associates grant writer or provider, and for each describe:

a.      the details of the assignment or project.

b.      the date it was assigned and completed.

c.      compensation paid for the work.

d.      the beneficiaries and recipients of the work.

e.      all of the work product and any related documents, including but not limited to invoices for payment, correspondence with clients, and all documents concerning the contracts that led to the project assignment.

**Answer:** Objection.  This interrogatory is not designed to reveal information that is discoverable under Federal Rule of Civil Procedure 26(b)(1).

The Court will overrule this objection.  The Court believes that this request is calculated to lead to the discovery of admissible evidence.  Balkanski appears to be an important witness in this case, and Resource Associates is thus entitled to detailed information about her involvement.

**INTERROGATORY NO. 13:**

Identify all communications between defendants, including its agents and employees, and any other person or entity, that relate to your claims and/or defenses, stating in your answer the mode of communication, the date of the communication, the parties to the communication, and the substance of the communication.

**Answer:** Objection.  This interrogatory is not designed to reveal information that is discoverable under Federal Rules of Civil Procedure 26(b)(1).  Defendant has responded to discovery seeking this same information in specific contexts.  To cause defendant to reveal and provide these same communications again is unreasonably cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C).  Furthermore, the burden and expense of the proposed discovery outweighs its likely benefit considering the needs of the case.  Also, this request seeks information protected by the attorney-client privilege and work product doctrine. The burden and expense of providing a privilege index far outweighs the benefit of this "fishing expedition" request.

The Court overrules this objection.  This interrogatory relates to the Defendants' claims and

defenses, so it seeks information that is particularly in the Defendants' possession, custody, and control. If the Defendants have already provided all information responsive to this interrogatory, they shall identify specifically where the information was provided. If the information is contained in produced documents, the Defendants will need to provide the Bates-stamp numbers for the documents. The Court is skeptical, however, that the Defendants can point to other discovery and documents, and fully answer this interrogatory. The Court tends to think a proper answer will require a detailed narrative with pinpoint references to documents and other discovery. In any case, the Defendants will need to serve an amended answer.

**INTERROGATORY NO. 14.**

> Identify by name, address, and telephone number all persons you believe have knowledge of the subject matter of this litigation, and describe in detail the substance of each person's knowledge.

> **Answer:** Defendant objects to this interrogatory to the extent it requires defendant to "describe in detail the substance of each person's knowledge." Such a requirement is vague, burdensome, unreasonable, and requires defendant to speculate about the knowledge of others. Without attempting such a description, defendant understands that the persons who have knowledge of the subject matter of this have been deposed (or have been scheduled for deposition) and their knowledge is consistent with their testimony.

By the time of the hearing, the only dispute on this interrogatory concerned the witness Underwood. The Court will allow disclosure of that witness. Defendants must disclose the witness and amend their Initial Disclosure and their Answer to Interrogatory No. 14 to include the witness by 5:00 P.M. on January, 30, 2009. The Court will also permit Resource Associates to depose Underwood. Resource Associates will have ten days from the time the Defendants amend their Initial Disclosures and their Answer to Interrogatory No. 14 to set the deposition. The deposition should occur within twenty days after that Notice of Deposition is served. If Underwood is difficult to serve, the Court will take that into consideration in any request for an extension of these deadlines. If, in the event

that the parties cannot agree on an extension, they may contact the Court's Courtroom Deputy and

set up a conference with the Court.

### REQUEST FOR PRODUCTION NO. 7:

Produce a full and accurate copy of the client tracking spreadsheet as described by Shelley Maberry in pages 108-109 of her deposition, and also testified about on page 83 of the deposition of Stacey Balkanski, in its original form (i.e. in electronic format as kept in the regular course of business).

**Response:** Objection. Defendant has provided the identity of all common clients on the "client tracking spreadsheet". The actual document is not discoverable under Federal Rule of Civil Procedure 26(b)(1). Furthermore, production of the list is unreasonably cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C).

The Court will overrule this objection. While the Court must be careful to avoid duplicative and

cumulative requests, this appears to request a single document and to be easy to produce. Resource

Associates is entitled to a list of clients, but is also entitled to other documents, within reason, that

list clients to assure itself the list is complete. Consistent with this Memorandum Opinion and

Order, the Defendants may redact information that the Court has ruled they do not need to produce.

### REQUEST FOR PRODUCTION NO. 12:

Produce complete and accurate copies of the entire contents of any files (be they electronic or paper files), that you have regarding any clients, or former clients, of Resource Associates.

**Response:** Objection. This interrogatory seeks information that is not discoverable under Federal Rule of Civil Procedure 26(b)(1). Furthermore the burden and expense of the proposed discovery outweighs its likely benefit considering the needs of the case.

The Court will overrule this objection in part and sustain it in part. It is not clear that the Defendants

understand that this is a request for production and not an interrogatory. In any case, the Court

believes that the request seeks information that reasonably may lead to discoverable evidence. At

the same time, the Court believes there should be some limitation. The Defendants must produce

the contracts, correspondence on how the contracts were entered into, invoices, and payments for all invoices to and from these clients.

IV.    **THE COURT WILL NOT REQUIRE DAVIS TO PRODUCE ANY DOCUMENTS.**

Regarding Resource Associates' second letter, it appears the discovery issues have already been largely addressed.  Related to discovery, there is a different situation with regard to a witness named Don Davis than there is with the other discovery.  The Court has no jurisdiction over a witness or a subpoena in Idaho.  See United States ex rel. Pogue v. Diabetics Treatment Centers of America, Inc., 444 F.3d 462, 468 (6th Cir. 2006)(explaining that a subpoena to depose a nonparty witness or for document production from a nonparty must issue from the court for the district where the deposition will be taken or the production will be made; moreover, any disputes that arise over the subpoena of a nonparty are decided by the court that issued the subpoena); Fed. R. Civ. P. 45(a)(2)(C).  If Resource Associates has an issue with Davis' compliance with a subpoena issued from a federal district court in Idaho, they must complain to that court.

Mr. Streubel represents that he has communicated to Resource Associates' attorneys that he does not understand Resource Associates' attorneys' grounds for seeking to exclude Davis' deposition testimony, and the Defendants oppose any such exclusion.  The Court also does not see a basis for excluding Davis' deposition.  The Court is reluctant to exclude a witness either because he made objections or because he hired the plaintiff's lawyer.  Resource Associates can pursue Davis' documents in Idaho, and if, after exhausting its appropriate judicial remedies, there is a basis for excluding his testimony, it can re-approach the Court about the problem.

V.    **THE COURT WILL NOT ORDER THE PARTIES TO A MEDIATION OR, WITHOUT AGREEMENT, ASK A MAGISTRATE JUDGE TO MEDIATE THIS DISPUTE UNTIL AFTER THE HEARING ON THE MOTION FOR SUMMARY JUDGMENT.**

The Court will not order the parties to mediation if they do not believe mediation will do them any good.  The Court is particularly reluctant to send parties to mediation when one of the parties insists on first waiting for a ruling on the motion for summary judgment.  The Defendants have expressed a desire to wait for a ruling on the motion for summary judgment, and the Court is sensitive to their concern.  The Court will therefore work with Magistrate Judges Scott and Schneider to set a mediation conference as soon as practicable after the Court holds the hearing on the motion for summary judgment, currently set for April 8, 2009, and gives the parties some guidance on its inclinations respecting that motion.

If the parties otherwise desire that the Court contact a magistrate judge to mediate this matter, they may contact K'Aun Wild, the Court's Courtroom Deputy Clerk, and the Court will assist the parties in getting the mediation set up.  Also, if the parties cannot agree on a mediator, but wish to mediate, the Court would be happy to select a mediator for the case.  Finally, if the parties prefer a mediator outside of the court system, the Court would be happy to assist in selecting one of the private mediators.

## VI.    THE DEFENDANTS NEED TO RESPOND TO THE DISCOVERY REQUESTS AS SOON AS POSSIBLE.

Resource Associates states that, without the Defendants' good-faith responses and cooperation in discovery, it – through no fault of its own – may not be able to meet the already extended discovery deadline of January 30, 2009.  The time has come for the Defendants to comply with its discovery obligations.  It is important that the Defendants, consistent with this opinion, provide full and complete answers and responses to all discovery served on it, make any necessary supplementation, and produce all responsive documentation immediately.  The Defendants will produce all the information required herein within ten days of this order, except for the expert, for

-24-

which the Court has set a separate deadline.

## VII.  THE COURT WILL PERMIT THE DEFENDANTS TO DISCLOSE A DAMAGES EXPERT.

The Defendants contend that the Court should establish a time later in the case for the expert's deposition when his opinion is complete to avoid multiple depositions of the expert.  The Court is disappointed that the Defendants have not fully disclosed all of their experts.  Nevertheless, the Defendants will be permitted to identify one witness to review the attorney bills and to testify about the necessity and reasonableness of those attorney bills.  The Court will also permit Resource Associates to use an expert to rebut the Defendants' expert on those narrow issues. The Defendants contend that Resource Associates cannot be prejudiced by this expert at this juncture of the case. The Defendants shall disclose their damages expert within fifteen days of the date of this order.  The disclosure shall include an expert report and the expert must be ready to be deposed.  He or she does not have to be deposed on the fifteenth day, but they must be ready to be deposed.

## VIII.  THE COURT WILL REQUIRE THE DEFENDANTS TO PRODUCE A COPY OF ANY FORMS OR TEMPLATES THAT THEY USE OR STILL POSSESS.

Resource Associates asserts that the Defendants should be compelled to produce internal forms and templates because those forms and templates are relevant to Resource Associates' claim that the Defendants stole Resource Associates forms and templates.  The Defendants maintain that they have already produced what forms they have.  The Court will order the Defendants to produce a copy of whatever forms or templates that they use or still possess, and have not already produced. The Defendants need not produce forms no longer in their possession.  The Defendants should also identify by Bates stamp, under oath, those forms and templates they have already produced.

**IT IS ORDERED** that the Defendants will produce the information as set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Patrick J. Rogers
Lorena Olmos de Madalena
Modrall Sperling Roehl Harris &
  Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff and Counterdefendant*

David A. Streubel
Timothy R. Mortimer
Streubel Kochersberger Mortimer LLC
Albuquerque, New Mexico

     *Attorneys for the Defendants, Counterclaimants,*
      *and Crossclaimants*