# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT WRITING
AND EVALUATION SERVICES, LLC,

        Plaintiff and Counterdefendant,

vs.                                     No. CIV 08-0552 JB/LAM

SHELLEY MABERRY, d/b/a,
MABERRY CONSULTING, INC., and
MABERRY CONSULTING AND
EVALUATION SERVICES, LLC,

        Defendants, Counterclaimants,
         and Crossclaimants,

vs.

DEBORAH MONTGOMERY,

        Crossclaim Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Motion for Partial Summary Judgment on

Plaintiff's Claim of Breach of Contract , filed March 2, 2009 (Doc. 167).  The Court held a hearing

on April 8, 2009.  The primary issues are: (i) whether the Consulting Agreement barred Defendant,

Counterclaimant, and Crossclaimant Shelley Maberry from both soliciting and accepting business

from Plaintiff and Counterdefendant Resource Associates Grant Writing and Evaluation Services,

LLC's clients and providers during the relevant time period; (ii) whether there was a termination

agreement between Resource Associates and Maberry; (iii) if there was a termination agreement,

what the agreement included; and (iv) whether, if there was a termination agreement, Maberry

violated that agreement.  If the Court were to find that the Consulting Agreement precludes

accepting business from Resource Associates' clients and providers during the relevant time period, the Court would also need to decide whether, in light of that interpretation, the undisputed evidence showed that Maberry violated the Consulting Agreement.  Because the plain language of the Consulting Agreement concerns only solicitation, approaching, or enticing,  the Court finds that Maberry was not prohibited from accepting business from otherwise off-limits clients and providers. In light of the Court's construction of the Consulting Agreement, the Court also finds that there are genuine issues of material fact regarding whether Maberry violated her contractual obligations. Finally, the Court finds that there is a dispute regarding whether Maberry agreed to the terms of a letter Resource Associates sent to her regarding her termination or of the attached Notice to Submit & Return Materials.  Because there is a factual dispute regarding the existence of a termination agreement, the Court will deny summary judgment on that issue.

## FACTUAL BACKGROUND

Resource Associates provides grant-prospect research, grant-proposal writing, and evaluation services to non-profit agencies, businesses, and the public.  Resource Associates uses its records and experience to serve its clients and to identify possible clients.  Resource Associates also retains highly qualified individuals as independent consultant/grant writers ("the providers").  Resource Associates identifies grant-writing opportunities for its clients or prospective clients, and charges a fee based on it services.

### 1.    Consulting Agreement.

Resource Associates retained Maberry, and on March 16, 2006, Maberry signed and entered into a Consulting Agreement that Resource Associates drafted.  See Exhibit 1 to Response, Consulting Agreement at 6 (Doc. 184-2).  The contract identifies Maberry as the "Consultant" and Resource Associates as the "Principal." Consulting Agreement at 1. The Consulting Agreement

-2-

states that its term commenced on March 16, 2005 and remained in effect until terminated.  See id.

The Consulting Agreement does not require any specific manner of termination and provides for

certain duties "[u]pon any termination" of it.  Id.

### 2.  **Confidentiality Provisions.**

The Consulting Agreement contains a provision discussing confidentiality, which states:

> (a) For the purposes of this Agreement, the term "Confidential Information" means all information disclosed to, or acquired by, the Consultant, its employees or agents in connection with, and during the term of this Agreement which relates to the Principal's past, present and future research, developments, systems, operations and business activities . . . .

> (b) The Consultant acknowledges that pursuant to the performance of its obligations under this Agreement, it may acquire Confidential Information.  The Consultant covenants and agrees, during the Term and following any termination of this Agreement, to hold and maintain all Confidential Information in trust and confidence for the Principal and not to use Confidential Information other than for the benefit of the Principal.  The Consultant acknowledges that the Principal regularly enters into non-disclosure agreements with its clients and that the terms of these agreements are to be followed by the Consultant without exception.  Except as authorized in writing by the Principal, the Consultant covenants and agrees not to disclose any Confidential Information, by publication or otherwise, to any person other than those persons whose services are contemplated for the purposes of carrying out the Agreement, provided that such persons agree in writing to be bound by, and comply with the provisions of this paragraph.  The Consultant shall obtain similar covenants and agreements to those contained in this paragraph for the benefit of the Principal from each of its employees or agents who are, or may be, exposed to Confidential Information.

Id.

### 3.  **The Non-Competition Clause.**

The Consulting Agreement includes a provision titled "Non-Competition/Non-Solicitation"

that states:

> **Non-Competition**.   The Provider acknowledges that in the course of this employment, he or she will acquire considerable knowledge about and expertise in specialized cases of the Company's business and that he or she will acquire confidential knowledge of and contact with customers and suppliers of the Company

and its Affiliates.  The Provider hereby agrees as follows:

> **Non-Solicitation of Customers**.  He or she will not, for a period of two (2) years after termination of his or her contract, directly or indirectly, approach any customers or business partner of the Company or its Affiliates for the purpose of providing services substantially similar to the services provided by the Company or its affiliates; and

> **Non- Solicitation of Providers**. For a period of two (2) years after termination of his or her contract, Provider will not directly or indirectly approach, solicit, entice, or attempt to approach, solicit or entice any of the other Providers of the Company or its Affiliates to leave their contact or employment with the Company in favor of another employment.

Id. at 3.

**4.   Further Assurances Clause.**

The Further Assurances Clause, which is part of the Consulting Agreement,  provides:

> Further Assurances.  The parties covenant and agree that each shall and will, upon reasonable request of the other, make, do, execute or cause to be made, done or executed, all such further and other lawful acts, deeds, things, devices and assurances whatsoever for the better or more perfect and absolute performance of the terms and conditions of the this [sic] agreement.

Id. at 5.

**5.   The Alleged Termination Agreement.**

Resource Associates also contends that Maberry breached a termination agreement.  The existence and scope of the alleged termination agreement is in dispute.  There is no single document that can be identified as a formal termination agreement.  Rather, Resource Associates argues that certain provisions in the Consulting Agreement, read together with other documents that Maberry received, establish the existence of a termination agreement.  Specifically, Resource Associates maintains that the termination letter, a confirmation letter, and "Notice to Submit & Return Materials," lay out terms for Maberry's severance, and that those terms are incorporated into the Consulting Agreement through the clause in the Consulting Agreement styled Further Assurances.

-4-

The Termination Letter, which is addressed from Deborah Montgomery to Shelley Maberry, states:

> You should immediately cease all evaluation, monitoring, and/or other services related to the following contracts . . . .  I am asking for your help and Resource Associates is relying on your professionalism to refrain from any further contact or engage in any communication with the customers associated with the above terminated contracts. . . .  Given your new relationship wit [sic] Mayberry [sic] Consulting we will maintain heightened confidentiality regarding your employment relationship with us; we request that you do the same.
>
> We would greatly appreciate you immediately forwarding all evaluation related materials, current/future client correspondence, and other information as required in your contract.  These include the items listed in the attached addendum.

Exhibit 3 to Response, Letter from Deborah Montgomery to Shelley Maberry at 1-2 (not dated), filed March 2, 2009 (168-4)("Termination Letter"). The letter states: "We trust that you will uphold the highest standards of professionalism and integrity in your communications with these clients and in the completion of this work." Id.  The letter also provides:

> We request you execute and return the enclosed confirmation letter, stating that you will indeed be completing the above 9 evaluation contracts for which you have already been paid in full pursuant to the terms of your employment contracts.  After completion of the above remaining work, and upon your forwarding of the information and documentation requested in the Notice to Submit & Return Materials, we will immediately process and forward you the final check.

Termination Letter at 3.

The Notice to Submit & Return Materials, which accompanied the Termination Letter, states:

> The following items must be submitted to Resource Associates immediately upon receipt of the notification of termination as per your contract: All contact information for your current projects including e-mail addresses and mailing addresses for all clients, primary contacts and other contacts involved in evaluation activities in any way . . . ALL correspondence exchanged with current clients pertaining in any way to current/ongoing or prospective projects.  It is not necessary to include every e-mail exchange with *previous* clients, but 'current clients' does include those involved in multi-year projects you worked on at *any* time regardless of whether or not you are currently involved in the project(s).

Notice to Submit & Return Materials at 1, filed March 2, 2009 (Doc. 168-4)(emphasis in original).

In relation to the materials accompanying and including the Termination Letter, Maberry received, signed, and returned one document – the Confirmation Letter to which the Termination Letter makes reference.  See Confirmation Letter at 1, signed by Shelley Maberry on March 10, 2006 ("Confirmation Letter.").  That Confirmation Letter states: "I, Shelley Maberry, will complete any remaining work required to fulfill the terms of the 9 evaluation contracts listed below for the benefit of Resource Associates, for which I have already been paid in full pursuant to the terms of my contracts."  Id.

   **6.**    **Maberry's Deposition.**

Maberry was deposed on September 10, 2008.  During her deposition, she was questioned regarding her understanding of the Non-Solicitation Clauses in the Consulting Agreement:

> Q. (By Mr. Rogers) Indirectly approaching a potential customer might include providing a draft contract to that potential customer?
>
>  . . . .
>
> A.  I would say that's pretty direct.
>
> Q.  (By Mr. Rogers) So, did you understand that you could not directly provide a draft contract, or a price list, to any potential customer?
>
> A.  I would say yes.
>
> Q.  Did you understand that you were prohibited from providing draft contracts to potential customers?
>
> A.  I believe I just answered that.  I would consider that a direct contact.  And, yes, I understand that to be against what this says.
>
> Q.  . . . .  Would providing pricing information to a potential customer constitute an indirect approach, in your mind?
>
> A.  I see that as very direct.  If I give you my price list, that's direct.

Q.  Did any of the former Resource Associates clients that are now your clients provide you with a draft contract for your services?

A. No, I don't believe so.

Q.  So, in each instance you provided those former clients of Resource Associates with a draft contract?

A.  At their request they would have been ultimately provided with a contract for whatever service.

Q.  Okay.  And for all of the former clients of Resource Associates you provided them with a pricing information about your services, correct?

A.  Yes.

Exhibit 4 to Brief, Deposition of Shelley Maberry at 194:1-195:16 (taken September 10, 2008)(Doc. 168-5)("Maberry Depo.").

## PROCEDURAL BACKGROUND

Resource Associates requests that the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, enter partial summary judgment in its favor as to Resource Associates' breach-of-contract claim.  To support its argument in favor of summary judgment, Resource Associates argues that the language of the Consulting Agreement should be read to preclude Maberry from either soliciting or accepting business from Resource Associates customers and providers.  See Brief in Support of Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim at 10, filed March 2, 2009 (Doc. 168)("Brief").  Resource Associates argues that Maberry's deposition testimony confirms that she believed that proposing a contract to clients or potential clients constitutes a "direct or indirect approach" which would violate the Consulting Agreement.  Brief at 8.

Resource Associates maintains that Maberry's deposition testimony contains admissions which demonstrate that Maberry violated the Consulting Agreement.  See Plaintiff's Reply Brief

in Support of its Motion for Summary Judgment on Plaintiff's Claim of Breach of Contract at 7, filed April 3, 2009 (Doc. 189)("Reply").  For example, Resource Associates points to testimony where Maberry admits to having provided former Resource Associates clients with contracts and pricing information.  See id.

The Defendants contend that the Consulting Agreement does not prohibit competition and that it prohibits only solicitation.  See Defendants' Response to Resource Associates' Motion for Partial Summary Judgment on its Breach of Contract Claim at 14, filed March 19, 2009 (Doc. 184)("Response").  According to the Defendants, the Consulting Agreement does not preclude acceptance of business from anyone who contacted the Defendants.  See id.  Alternatively, the Defendants maintain that, because non-competition provisions are only enforceable if they are reasonable and because such provisions should be strictly construed against their drafter, the Court should construe the Consulting Agreement in this case as prohibiting only solicitation.  See Response at 13-14.  The Defendants argue that any other construction of the Consulting Agreement would be an unreasonable prohibition on competition and would be unenforceable.  See Response at 14.

Resource Associates also insists that Maberry breached the termination agreement. According to Resource Associates, the termination agreement is reflected in the packet of documents accompanying the Termination Letter.  Thus, Resource Associates insists that, by signing the Confirmation Letter, Maberry was bound by all of the terms in the Termination Letter and Notice to Submit & Return Materials, including a requirement that she notify Resource Associates of any client contact.  See Brief at 2.  Resource Associates argues that Maberry affirmed her agreement to the terms of the  Notice to Submit & Return Materials when she sent an email on March 7, 2006, agreeing to advise Resource Associates of any contacts by its clients and to redirect them to

Resource Associates.  See Brief at 3-4; Exhibit 8 to Brief, Electronic Mail Message from Shelley Maberry to Deborah Montgomery at 1 (dated March 7, 2006)(Doc. 168-9)("I will continue to direct your clients to your corporate office.")("E-mail").

Resource Associates argues that the undisputed evidence demonstrates that Maberry violated the terms of the documents constituting the termination agreement.  See Brief at 8.  Resource Associates points to deposition testimony in which Maberry admits that she did not inform Resource Associates of the contact she was having with Resource Associates' clients.  See Maberry Depo. at 163:3-19.

The Defendants maintain that Maberry did not agree to the requests in the Termination Letter or to those in the Notice to Submit & Return Materials.  See Response at 4.  The Defendants also argue that the Confirmation Letter did not obligate Maberry to inform Resource Associates of any contact with Resource Associates' clients.  See Response at 12.  The Defendants contend that Maberry did not agree to the requests in the Termination Letter.  See Response at 6.  They insist that Maberry complied with all of her obligation under the Confirmation Letter.  See Response at 5; Maberry Depo. 212:12-226:12.

At the hearing, the Defendants argued that Resource Associates is attempting to manufacture a termination agreement to back-door non-competition and non-solicitation obligations into the Consulting Agreement.  See Transcript of Hearing at 34:12-23 (taken April 8, 2009)(Struebel)("Tr.").[1]  Resource Associates, on the other hand, counters that Maberry signed the termination agreement when she signed the attached Confirmation Letter.  See Tr. at 26:4-5 (Rogers).

_____

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

The Court queried the parties whether the contract was ambiguous and whether a Mark V[2] hearing would be necessary.  See Tr. at 61:14-23 (Court, Rogers, & Streubel).  Alternatively, the Court questioned the parties whether it should proceed to interpreting the contract provisions at issue on this motion.  See id.  The parties agreed that the terms were not ambiguous and that the Court should construe the contract at this time.  See id.

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must

---

[2] Mark V, Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  In Mark V, Inc. v. Mellekas, the Supreme Court of New Mexico summarizes the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is ambiguous and leave construction of the contract to a jury.  According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law.  If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists."  Id., 845 P.2d at 1235 (citations omitted).

set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'")(quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990).  "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005 at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005 at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

-11-

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. The mere existence of a scintilla of evidence will not avoid summary judgment. See Vitkus v. Beatrice Co., 11 F.3d at 1539. There must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **RELEVANT LAW REGARDING CONTRACT INTERPRETATION**

The Supreme Court of New Mexico summarized the law of contract interpretation in New Mexico as follows:

> The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. C.R. Anthony, 112 N.M. at 508-09, 817 P.2d at 242-43. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. Id. at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. Vickers v. North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder . . . .

Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.

## RELEVANT LAW REGARDING NON-COMPETITION PROVISIONS

New Mexico courts have acknowledged "that reasonable restrictive covenants in an employment agreement are acceptable even if the covenants restrain trade or competition to some degree." Campbell v. Millennium Ventures, LLC, 132 N.M. 733, 738, 55 P.3d 429, 434 (Ct. App. 2002). The New Mexico Court of Appeals in Campbell v. Millennium Ventures, LLC upheld a non-compete clause which stated:

> The Employee covenants . . . that for a period of three (3) years from and after the termination of employment with the Employer, however such termination occurs, the Employee shall not, directly or indirectly . . . solicit, attempt to solicit, or accept any insurance business . . . from any customer or account on the books of the Employer at the time Employee's employment shall terminate, or within twelve (12) months prior thereto, or from any person . . . or corporation [who] has been solicited on behalf of the Employer at any time during the twelve (12) months prior to the termination of the Employee's employment . . . .

Id. at 734-35, 55 P.3d at 430-31 (ellipses in original). In upholding the covenant, the New Mexico Court of Appeals reasoned: "Although these types of covenants have a tendency to eliminate or restrict competition and may operate to compel an employee to remain in the employ of an employer, 'these are legitimate purposes, so long as the restrictions are reasonable.'" Id. at 738, 55 P.3d at 434 (quoting Lovelace Clinic v. Murphy, 76 N.M. 645, 650, 417 P.2d 450, 453 (1966)).

In Lovelace Clinic v. Murphy, the Supreme Court of New Mexico upheld a provision in an employment contract which prohibited a physician from practicing medicine in Bernalillo County for three years after the termination of his employment. See 76 N.M. at 652, 417 P.2d at 454. Similarly, in Manuel Lujan Ins., Inc. v. Jordan, 100 N.M. 573, 577, 673 P.2d 1306, 1310 (1983), the Supreme Court of New Mexico upheld a clause which provided:

> In event the Employee shall leave the employment of the Company, or if his employment is terminated by the Company for any reason or cause whatsoever, he shall not for a period of two (2) years from the date of termination of employment solicit the customers (policyholders) of the Company, either directly or indirectly.

> The purpose of this paragraph is to insure that the Employee for the periods set out herein, will not in any manner directly or indirectly enter into competition with the Company on [sic] the customers of the Company as of date of termination.

100 N.M. at 575, 673 P.2d at 1308 (brackets in opinion).  In <u>Manuel Lujan Ins., Inc. v. Jordan</u>, one party contended that this clause precluded solicitation, but did not bar acceptance of business from Lujan's customers.  <u>See</u> <u>id.</u> at 575, 673 P.2d at 1308.  Interpreting the language of the clause, however, the Supreme Court of New Mexico found that it precluded both solicitation and acceptance of business, because the clause included language barring solicitation, in addition to language precluding competition in any form.  <u>See</u> <u>id.</u> at 575, 673 P.2d at 1308.

## ANALYSIS

At the hearing, the parties agreed that the Court should interpret the Non-Solicitation Clauses and that at trial the Court would instruct the jury regarding its meaning.  <u>See</u> Tr. at 61:14-23 (Court, Rogers, & Streubel)("Tr.").  The Court agrees that the Non-Solicitation Clauses are not ambiguous and that the Court should interpret the terms at this time.  Interpreting the plain language of the Consulting Agreement, the Court finds that the Consulting Agreement does not bar Maberry from accepting business from Resource Associates clients or providers.

Furthermore, the Court believes that there is a factual dispute regarding whether there was a termination agreement, as Resource Associates understands and uses that term.  While Maberry was bound by the terms of the Confirmation Letter, her signature on the Confirmation Letter did not necessarily bind her to the terms of the Termination Letter or to the Notice to Return & Submit Materials.  And while much of the evidence Resource Associates offers to establish that Maberry assented is weak or inconclusive, it has cited sufficient evidence to put the question to the jury whether Maberry agreed to any terms in the termination documents apart from those in the Confirmation Letter.  In light of how the Court has interpreted these contractual provisions and

-14-

documents, summary judgment would be inappropriate at this time.  There are factual disputes

whether Maberry solicited Resource Associates clients in violation of the Consulting Agreement.

Whether Maberry violated the Non-Solicitation Clauses and whether there was a termination

agreement are ultimately jury questions.  The Court will therefore deny summary judgment.

I.      **THE COURT CAN PROPERLY CONSTRUE THE NON-SOLICITATION CLAUSES
        BECAUSE THOSE CLAUSES ARE NOT AMBIGUOUS.**

The Supreme Court of New Mexico has explained:

> The court may consider collateral evidence of the circumstances surrounding the
> execution of the agreement in determining whether the language of the agreement
> is unclear.  C.R. Anthony, 112 N.M. at 508-09, 817 P.2d at 242-43.  If the evidence
> presented is so plain that no reasonable person could hold any way but one, then the
> court may interpret the meaning as a matter of law.  Id. at 510, 817 P.2d at 244.  If
> the court determines that the contract is reasonably and fairly susceptible of different
> constructions, an ambiguity exists.  Vickers v. North Am. Land Dev., Inc., 94 N.M.
> 65, 68, 607 P.2d 603, 606 (1980).  At that point, if the proffered evidence of
> surrounding facts and circumstances is in dispute, turns on witness credibility, or is
> susceptible of conflicting inferences, the meaning must be resolved by the
> appropriate fact finder . . . .

Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  The Court agrees with the parties that

the Non-Solicitation Clauses are unambiguous.  The only extrinsic evidence that either party has

offered regarding the parties' understanding of the Consulting Agreement is the deposition

testimony in which Maberry discusses her understanding of the meaning of direct and indirect

approaching or soliciting.  That testimony, however, cannot be fairly read to establish an ambiguity

in the Consulting Agreement.  In context, it appears Maberry is relating her understanding of the

terms "direct" and "indirect," and is not committing herself to a position that sending price

information or contracts after being contacted first constituted a direct approach in violation of the

Consulting Agreement as she understood it.  Specifically, Maberry's testimony is that she

understood the Non-Solicitation Clauses to permit accepting business if she were approached first.

-15-

Her discussion of the meaning of an indirect approach comes in the context of a hypothetical discussion, without reference to whether providing contracts would constitute a direct approach if she were approached before providing the contract.  There is no other collateral evidence of the parties' understanding of the Non-Solicitation Clauses that would support a finding that there is ambiguity.  On such a record, the Court is on good ground in deciding that the Non-Solicitation Clause is unambiguous.  Because the Court finds the Non-Solicitation Clauses to be unambiguous, the Court can properly construe them as a matter of law.  The Court will proceed to do so.

## II.     THE COURT WILL NOT VOID THE NON-SOLICITATION CLAUSES AS UNREASONABLE.

"[R]easonable restrictive covenants in an employment agreement are acceptable even if the covenants restrain trade or competition to some degree."  Campbell v. Millennium Ventures, LLC, 132 N.M. at 738, 55 P.3d at 434.  The Non-Solicitation Clauses from the Consulting Agreement are narrowly crafted.  They encompass a period of two years, beginning with the date of termination of employment.   See Consulting Agreement at 3 (noting that the Non-Solicitation provisions apply "for a period of two (2) years after termination of [Maberry's] contract").  New Mexico courts have upheld as reasonable non-compete covenants that last for longer periods, including up to three years.

In Campbell v. Millennium Ventures, LLC, the New Mexico Court of Appeals dealt with a contractual provision that prohibited an employee from soliciting or accepting any business from customers or accounts on the employer's books at the time of termination, or from potential clients that the employer had solicited within the twelve-month period preceding termination.  See id. at 734-35, 55 P.3d at 430-31.  The provisions in this case therefore encroach upon the ability of the signatory to solicit Resource Associates' clients and providers for a shorter period – to be precise, a year less than what was allowed under the contract in Campbell v. Millennium Ventures, LLC.

-16-

Moreover, the clauses at issue in this case are more narrowly drafted, prohibiting a narrower range of activity than other non-compete clauses that New Mexico courts have found to be reasonable.

For example, in Lovelace Clinic v. Murphy, the Supreme Court of New Mexico upheld a contract provision which barred a physician from practicing medicine in Bernalillo County for three years after the termination of his employment.  See 76 N.M. at 652, 417 P.2d at 454.  The Supreme Court of New Mexico in Lovelace Clinic v. Murphy reasoned that the ends that the non-compete provision served – inducing an employee to remain with the employer and restricting competition – were legitimate.  See id. at 650, 417 P.2d at 453.

The Consulting Agreement at issue in this case does not purport to completely bar Maberry from plying the same trade as she did for Resource Associates within a geographic region.  Rather, the consulting agreement is more limited, precluding certain activity with relation only to Resource Associates' clients and providers.  Such a restriction is more narrow than the ones in Lovelace Clinic v. Murphy.

Given that the Non-Solicitation provisions in this case are more narrowly drafted and have a more limited reach than others that New Mexico courts have upheld, the Court is convinced that New Mexico courts would uphold the provisions in this case as reasonable.  The Court will therefore decline the invitation to void the provisions.  The Court will instead uphold them and proceed to construe them.

## III.    THE CONSULTING AGREEMENT DOES NOT PROHIBIT MABERRY FROM PROVIDING CONTRACTS AND SERVICES FOR RESOURCE ASSOCIATES' CLIENTS WHO APPROACH HER FIRST.

Resource Associates maintains that the Court should interpret the Non-Solicitation Clauses in the Consulting Agreement to have a similar effect as the non-compete clause at issue in Manuel Lujan Ins., Inc. v. Jordan.  The Court concludes, however, that Resource Associates' reading of the

language in the Consulting Agreement is strained and, ultimately, incorrect.  Based on the plain language of the provision, the Court concludes that Maberry was permitted to accept business from Resource Associates clients as long as she did not approach them within the two-year period during which the Non-Solicitation Clauses were in effect, and from providers as long as she did not approach, solicit, or entice them within the two-year period during which the Non-Solicitation Clauses were in effect.

The Consulting Agreement provides, in pertinent part:

> **Non-Competition**.  The Provider acknowledges that in the course of this employment, he or she will acquire considerable knowledge about and expertise in specialized cases of the Company's business and that he or she will acquire confidential knowledge of and contact with customers and suppliers of the Company and its Affiliates.  The Provider hereby agrees as follows:

> **Non-Solicitation of Customers**.  He or she will not, for a period of two (2) years after termination of his or her contract, directly or indirectly, approach any customers or business partner of the Company or its Affiliates for the purpose of providing services substantially similar to the services provided by the company or its affiliations; and

> **Non- Solicitation of Providers**. For a period of two (2) years after termination of his or her contract, Provider will not directly or indirectly approach, solicit, entice, or attempt to approach, solicit or entice any of the other Providers of the Company or its Affiliates to leave their contract or employment with the Company in favor of another employment.

Consulting Agreement at 3.  The key language appears under the two headings, Non-Solicitation of Customers and Non-Solicitation of Providers.  The Consulting Agreement precludes Maberry from "directly or indirectly . . . approach[ing] any customers or business partner of the Company" during the applicable two-year period.  Id.  The Consulting Agreement also states that Maberry "will not directly or indirectly approach, solicit, entice, or attempt to approach, solicit or entice any of the other Providers of the Company or its Affiliates to leave their contract or employment with the Company in favor of another employment."  Id.  The applicable time period is for two years after

-18-

termination.  In other words, these provisions are silent about solicitation activity during the time that Maberry was under contract with Resource Associates.

Thus, the only prohibitions that the Consulting Agreement provides regarding non-solicitation of clients involve approaching Resource Associates' clients for the two-year period following termination.  The prohibitions with respect to providers are slightly broader, but the Consulting Agreement allows Maberry to accept business proposals from Resource Associates' providers as long as she does not approach, solicit, or entice them.[3]  The Consulting Agreement is silent about accepting business, or about reacting to requests from Resource Associates' providers and customers.  To hold that the Consulting Agreement bars Maberry from accepting business from Resource Associates customers and providers, would require the Court to insert terms into the

_____

[3] A careful reading of Non-Solicitation Clauses reveals that there are different zones of proscribed activity with regard to clients and providers.  The Non-Solicitation Clause of Customers bars Maberry from directly or indirectly "approach[ing] Resource Associates' customers or business partners."  Consulting Agreement at 3.  In contrast, the section relating to providers is more broadly drafted, and prevents Maberry from directly or indirectly "approach[ing], solicit[ing], entic[ing], or attempt[ing] to approach, solicit, or entice . . . ."  Id.  While a ban on only "approaching" suggests that Maberry is only prevented from making the first contact towards a client, it is difficult to escape the conclusion that, as to providers, the Non-Solicitation Clause of Providers proscribes a broader range of activity, including, in addition to "approaching," "solicit[ing]" and "entic[ing]" Resource Associates' providers.  Consulting Agreement at 3.  The Court can imagine solicitation and enticement occurring even when providers have approached Maberry first.  The difference between these two provisions, however, is not important to deciding whether Resource Associates is entitled to summary judgment for violations of the Non-Solicitation Clauses, given that the Court is finding that, regardless of the differences between what was allowed regarding customers and providers, the Non-Solicitation Clauses permitted Maberry to accept business in a reactive fashion.  Given the record at this point, Resource Associates' motion rests on a contrary construction, under which Maberry could not accept business without violating the contract.  If the Court had construed the Consulting Agreement to say that Maberry could not accept business from clients or providers who approached her and made offers to her first, it is more likely that the undisputed facts would establish Resource Associates' entitlement to summary judgment, at least in part.  The Court's interpretation of the Non-Solicitation Clauses, however, leaves it so that there continue to be genuine issues of material fact regarding whether Maberry engaged in proscribed activity, regardless of how the Court interprets the specific differences between the language dealing with customers and that dealing with providers.

Consulting Agreement that are not there.  The Court declines to redraft the Consulting Agreement to facilitate summary judgment in favor of one party.

Contrary to Resource Associates' contention, the Consulting Agreement's restrictions on solicitation are substantially different from those in Manuel Lujan Ins., Inc. v. Jordan.  In Manuel Lujan Ins., Inc. v. Jordan, the first part of the non-competition clause was similar to the language in this case.  Specifically, the first half of the clause provided that, upon termination, the employee "shall not for a period of two (2) years from the date of termination of employment solicit the customers (policyholders) of the Company, either directly or indirectly."  100 N.M. at 575, 673 P.2d at 1308.  Thus, both the Consulting Agreement and the contract in Manuel Lujan Ins., Inc. v. Jordan contain prohibitions on "direct or indirect" solicitation.  More precisely, the Consulting Agreement in this case bars "approach[ing], solicit[ing], [and] entic[ing]."  Consulting Agreement at 3.  The contract in Manuel Lujan Ins., Inc. v. Jordan, which was interpreted to bar both solicitation and accepting business, however, parts ways materially with the language of the Consulting Agreement in its statement that "'[t]he purpose of this paragraph is to insure that the Employee for the periods set out herein, will not in any manner directly or indirectly enter into competition with the Company on [sic] the customers of the Company as of date of termination.'"  100 N.M. at 575, 673 P.2d at 1308 (brackets in opinion)(quoting the contract at issue).  The Consulting Agreement in this case contains no corresponding language indicating an intent to prevent competition with Resource Associates.

The presence of the language regarding prevention of competition is what persuaded the Supreme Court of New Mexico in Manuel Lujan Ins., Inc. v. Jordan to distinguish a case upon which one party relied to argue that the clause did not prohibit accepting business. The Supreme Court of New Mexico explained:

> The primary cases cited by Jordan in attempting to distinguish between post-employment solicitation and post-employment acceptance of business are not in point.  While it is true that the court in *Rubel & Jensen Corp. v. Rubel*, 85 N.J.Super. 27, 203 A.2d 625 (1964) allowed acceptance of unsolicited business in the face of a covenant not to solicit, the covenant there differed materially from the one before us.  That covenant concerned only direct or indirect solicitation.  There was no additional language precluding competition in any form as is contained in the instant contract.  *Rubel & Jensen* is thus distinguishable on its facts.

Manuel Lujan Ins., Inc. v. Jordan 100 N.M. at 575, 673 P.2d at 1308.  Thus, the Supreme Court of New Mexico found it important to its analysis that the contract it was construing contained "additional language" beyond the prohibition on solicitation.  Id., 673 P.2d at 1308.

The Consulting Agreement in this case does not contain "additional language" prohibiting competition.  It is true – and Resource Associates has placed great emphasis on this point – that the Consulting Agreement includes a heading styled Non-Competition.  The text following the heading, however, precludes only certain competition – namely, directly or indirectly approaching, soliciting, or enticing.  See Consulting Agreement at 3.  The heading generically indicates that the topic of the section in question is non-competition.  The actual language in the Consulting Agreement falling under the heading, however, is controlling, and indicates that the Consulting Agreement was drafted to require some, but not complete non-competition.

Resource Associates argues that Maberry's deposition testimony confirms that she understood the Consulting Agreement to prohibit providing contracts and pricing information to Resource Associates providers and customers, regardless whether those providers and customers approached her first or vice versa.  While this deposition testimony poses some difficulty for Maberry, the Court believes that, in the context of the entire deposition and other evidence, Maberry was not admitting a belief that the Consulting Agreement precluded her from accepting business from Resource Associates clients and providers.

In her deposition, Maberry admitted her belief that providing a contract or price lists would constitute direct approach, which would be prohibited.  See Maberry Depo. at 194:1-195:16.  This testimony, however, must be read in light of the rest of her testimony.  At multiple points during the deposition, Maberry represented her view that the Consulting Agreement barred soliciting or enticing Resource Associates clients and providers.  See Maberry Depo. at 192:19-22 ("[F]or two years I am not to approach entities that I know to be Resource Associates clients for the purpose of providing services to them."); id. at 200:8-12 ("I could not solicit or entice a Resource Associates provider . . . .").  Given that this deposition testimony appears in a relatively short time frame – between pages 192 and 200 of the deposition transcript, the Court is disinclined to conclude that, in one breath Maberry was testifying that she understood the Consulting Agreement to bar approaching, soliciting, and enticing, and in the next breath was admitting that providing contracts after being approached by Resource Associates' clients or after receiving business proposals from providers was activity that fell within the Non-Compete provision in the Consulting Agreement.

Maberry was answering carefully worded questions in her deposition.  Resource Associates did not ask her if she thought providing contracts or price information after being approached constituted approaching, soliciting, or enticing.  Rather, Resource Associates asked Maberry about her understanding of what it means to indirectly "approach" a customer, and Maberry answered in that context, possibly not considering the fact that her answers, which could have been more carefully stated, would be used to suggest an admission that she did not intend to make.  See Maberry Depo. at 194:2-5 (Q. (by Mr. Rogers) "Indirectly approaching a potential customer might include providing a draft contract to that potential customer?"  A. (by Maberry) "I would say that's pretty direct.").

In conclusion, the Court believes that the Consulting Agreement permits Maberry to accept

business from Resource Associates' clients and providers.  The Court declines to add terms to the contract that are not already present.  The Court also finds that Maberry's deposition testimony does not conclusively establish that she believed the Consulting Agreement to preclude accepting business from Resource Associates' clients or providers.

III.    **THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER MABERRY BREACHED THE NON-SOLICITATION PROVISIONS OF THE CONSULTING AGREEMENT.**

There is insufficient evidence to say that Maberry solicited providers or clients during her time with Resource Associates.  There are also genuine issues of material fact regarding whether she did so in the two year period following her termination.  Resource Associates has presented evidence that could lead a jury to find that Maberry violated the Non-Solicitation Clauses.  At the same time, Maberry has provided evidence raising a genuine issue of material fact.

Resource Associates has argued that Maberry's June 17, 2008 affidavit, which she submitted as an attachment to her Response, is a sham and that the Court should disregard it as such.  According to Resource Associates, the affidavit represents an improper attempt to counteract direct deposition testimony to the contrary as a means of creating an issue of material fact.  See Tr. at 30:2-21 (Rogers).  The Court disagrees with the contention that the affidavit is a sham.  Read in context, with the understanding that the deposition was carefully and skillfully taken, the deposition testimony to which Resource Associates refers does not conclusively establish that Maberry understood sending contracts or price lists after reacting to inquiries to be a violation of the terms of the Consulting Agreement.  The Court therefore need not view the affidavit as an attempt to contradict direct testimony already on the record to the contrary.

In her affidavit, Maberry denies using Resource Associates' confidential information or soliciting, approaching, or enticing its clients or business partners.  See Exhibit 9 to Response,

Declaration of Shelley Maberry ¶¶ 9-10, at 3 (executed June 17, 2008)(Doc. 184-10).  It is therefore

inappropriate to grant summary judgment.  A jury will have to decide whether there was a breach

of these provisions.

## IV.   IT IS A QUESTION FOR THE JURY TO DECIDE WHETHER THERE WAS A TERMINATION AGREEMENT IN THE FORM RESOURCE ASSOCIATES ADVANCES.

"'[W]hen the existence of a contract is at issue and the evidence is conflicting or permits

more than one inference, it is for the finder of fact to determine whether the contract did in fact

exist.'" Eckhardt v. Charter Hosp. of Albuquerque, Inc., 124 N.M. 549, 559, 953 P.2d 722, 732 (Ct.

App. 1997)(quoting Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 807, 664 P.2d

1000, 1005 (Ct. App. 1983), overruled on other grounds by Montoya v. AKAL Sec., Inc., 114 N.M.

354, 357, 838 P.2d 971, 974 (1992)).  Resource Associates argues that there was a termination

agreement which consisted of the Termination Letter, the Notice to Submit & Return Materials, and

the Confirmation Letter.  There is no dispute that Maberry signed the Confirmation Letter and

assented to the duties which that Confirmation Letter described.  While the evidence is arguably

weak regarding the other termination documents' terms, there is evidence that could support a jury

finding that Maberry agreed to the requests in the Termination Letter or the Notice to Submit &

Return Materials.  Given that evidence, the Court will not grant summary judgment in favor of either

party regarding whether the termination existed and what its terms were.  Rather, a jury will have

to decide.

The primary evidence Resource Associates marshals to support its argument that there was

a termination agreement that encompassed the terms of the Termination Letter, the Confirmation

Letter, and the Notice to Submit & Return Materials is that: (i) Maberry signed the Confirmation

Letter, which was part of the termination package and which bound her to the rest of the terms in

the termination documents; (ii) the terms of the termination documents were incorporated into the Consulting Agreement pursuant to the Further Assurances Clause of the Consulting Agreement; and (iii) Maberry sent an electronic mail message to Deborah Montgomery implying that she agreed to comply with the terms of the termination documents  The Court finds that, while most of the evidence does not support the finding that there was a termination agreement beyond the terms of the Confirmation Letter, the e-mail contains manifestations by Maberry that might support a finding that she agreed to at least some of the terms of the other termination documents.

### A. THE CONFIRMATION LETTER OBLIGATED MABERRY ONLY TO COMPLETE THE NINE CONTRACTS FOR WHICH SHE HAD ALREADY BEEN PAID.

According to Resource Associates, Maberry's signature on the Confirmation Letter bound her to the terms of all of the other accompanying documents.  Resource Associates' position in this regard is untenable.  The Confirmation Letter states: "I, Shelley Maberry, will complete any remaining work required to fulfill the terms of the 9 evaluation contracts listed below for the benefit of Resource Associates, for which I have already been paid in full pursuant to the terms of my contracts."  Confirmation Letter at 1.  There is no other request in the Confirmation Letter beyond the obligation to fulfill the terms of the nine listed contracts for which Maberry had already received payment.  Moreover, the Termination Letter states: "We request you execute and return the enclosed confirmation letter, stating that you will indeed be completing the above 9 evaluation contracts for which you have already been paid in full pursuant to the terms of your employment contracts."  Termination Letter at 3.

Thus, both the Confirmation Letter and the reference to the Confirmation Letter found in the Termination Letter indicate that the purpose of the Confirmation Letter was to secure the completion of nine specifically mentioned contracts for which Maberry had already been paid.  There is no

reasonable way to read the Confirmation Letter as also binding Maberry to the various obligations listed in the other documents. To do so would turn the Confirmation Letter into a bait-and-switch, because Maberry would have executed the Confirmation Letter, believing it obligated her only to the extent it requested, only to discover later that, although the Confirmation Letter did not say so, her signature on the Confirmation Letter also bound her to various other obligations.

**B. THE FURTHER ASSURANCES CLAUSE CANNOT BE USED ON ITS OWN TO INCORPORATE THE NEW TERMS FOUND IN THE TERMINATION DOCUMENTS.**

Resource Associates maintains that the terms of these documents are, in effect, incorporated into the Consulting Agreement by way of the Further Assurances Clause. The Further Assurance Clause provides:

> Further Assurances. The parties covenant and agree that each shall and will, upon reasonable request of the other, make, do, execute or cause to be made, done or executed, all such further and other lawful acts, deeds, things, devices and assurances whatsoever for the better or more perfect and absolute performance of the terms and conditions of the this [sic] agreement.

Id. at 5. Whatever this clause obligated either party to do, it is unreasonable to interpret it the way Resource Associates is arguing. If the Court adopted Resource Associates' interpretation, a party could, pursuant to the Further Assurances Clause, place something in the mail at any time which adds new terms – or perhaps deletes existing ones – and which binds the recipient simply by virtue of characterizing the new terms as "further assurances." The Court sees no sound reason to construe the Further Assurances Clause to allow such a result.

A contract that allowed for unilateral alteration by either party under the auspices of seeking further assurances would inject so much uncertainty into a contract that the contract would become useless. Furthermore, it would be unfair to allow one party to spring new terms on the other by merely mailing a letter containing the new terms. Accordingly, there is good reason not find that

the Further Assurances Clause was enough to incorporate the terms of the Termination Letter and

the Notice to Submit & Return Materials in the absence of evidence that Maberry assented to their

terms.

>    **C.   THE E-MAIL IS EVIDENCE THAT MABERRY AGREED TO AT LEAST SOME OF THE REQUESTS IN THE TERMINATION AGREEMENT OR THE NOTICE TO SUBMIT & RETURN MATERIALS.**

The Termination Letter and the Attached Notice to Submit & Return Materials make various

requests of Maberry.  For example, the Termination Letter provides:

> You should immediately cease all evaluation, monitoring, and/or other services related to the following contracts . . . .  I am asking for your help and Resource Associates is relying on your professionalism to refrain from any further contact or engage in any communication with the customers associated with the above terminated contracts. . . .  Given your new relationship wit [sic] Mayberry [sic] Consulting we will maintain heightened confidentiality regarding your employment relationship with us; we request that you do the same.

> We would greatly appreciate you immediately forwarding all evaluation related materials, current/future client correspondence, and other information as required in your contract.  These include the items listed in the attached addendum.

Termination Letter at 2.  The Notice to Submit & Return Materials, which accompanied the

Termination Letter, states:

> The following items must be submitted to Resource Associates immediately upon receipt of the notification of termination as per your contract: All contact information for your current projects including e-mail addresses and mailing addresses for all clients, primary contacts and other contacts involved in evaluation activities in any way . . . ALL correspondence exchanged with current clients pertaining in any way to current/ongoing or prospective projects.  It is not necessary to include every e-mail exchange with *previous* clients, but 'current clients' does include those involved in multi-year projects you worked on at *any* time regardless of whether or not you are currently involved in the project(s).

Notice to Submit & Return Materials at 1, filed March 2, 2009 (Doc. 168-4).  Absent from either

document however, is an indication that Maberry would execute them or otherwise manifest her

assent to their terms.  The only extrinsic evidence Resource Associates presents that Maberry agreed

to any of the terms is an electronic mail message in which Maberry states: "I will continue to direct your clients to your corporate office,"  E-mail at 1, and one answer to an interrogatory in which, according to Resource Associates, Maberry refers to a termination agreement, <u>See</u> Tr. at 10:1-11 (Rogers)(referring to Maberry Consulting And Evaluation Services. LLC Second Supplemental Responses to Resource Associates Second Set of Discovery, Answer to Interrogatory No. 13, at 2, filed March 19, 2009 (Doc. 183-2).   While the Answer to the Interrogatory is, on its own insufficient,  the e-mail contains statements that arguably establish assent to the terms of the Termination Letter or the Notice to Submit & Return Materials.

Resource Associates emphasizes Maberry's statement in the email that "I will continue to direct your clients to your corporate office." E-mail at 1. This statement arguably refers to requests in the termination documents regarding future contact with Resource Associates' clients.  A jury could read the statement from the e-mail as evidence that Maberry had agreed to terms found in the termination documents.

Moreover, the rest of the e-mail contains other references to requests made in the termination documents.  For example, Maberry discusses other documents and information that she will be forwarding to Resource Associates when certain conditions are met.  <u>See</u> E-mail at 1.  In the e-mail, for example, Maberry states: "On the advice of my attorney – I will not ship any documents or forward any additional e-files, until such payment is received." <u>Id.</u>  The e-mail further states: "Any requests for additional information or clarification on any project that I was previously affiliated with will be billed at a rate of $75 per hour, in half hour increments."  <u>Id.</u>  Finally, the e-mail provides: "Once the above referenced payment is received – I will forward the boxes (COD) that are being prepared.  I will complete the APRs for the other projects that were paid in full in December 2005, as planned."  <u>Id.</u>  The overall impression that the e-mail creates is that there were

-28-

some lingering obligations after termination and that there was perhaps an agreement to some things discussed in the termination documents.

The tone of the e-mail at least permits an inference that there was an agreement.  See Eckhardt v. Charter Hosp. of Albuquerque, Inc., 124 N.M. at 559, 953 P.2d at 732.  On the other hand, in her deposition testimony, Maberry repeatedly denies having agreed to anything outside the Confirmation Letter.  Furthermore, she denies having read the Notice to Submit & Return Materials. Ultimately, the evidence permits multiple inferences, and a credibility determination will have to be made to make the ultimate decision which evidence to believe. The Court cannot say that a reasonable jury could not, upon seeing evidence and hearing the parties' testimony, find that there was no termination agreement.  Rather, the Court believes the credibility determination should be left with the jury where it belongs.

In conclusion, the Court finds that the Consulting Agreement permits Maberry to accept business from Resource Associates' clients as long the clients approach her first.  The Consulting Agreement also allows Maberry to accept business from Resource Associates' providers as long as she refrains from approaching, soliciting, or enticing them during the applicable period.  The Court will not inject terms into the Consulting Agreement that are not there.  The Court also finds that summary judgment is inappropriate regarding the existence of the termination agreement.  The jury will have to decide whether such an agreement existed and what its terms were.  If the jury determines there was such an agreement, it can then proceed to determine whether Maberry breached those terms.  Finally, in light of the Court's interpretation of the Consulting Agreement, there are genuine issues of material fact whether Maberry solicited clients within the two-year time period after her termination.  Both sides have presented evidence which precludes summary judgment.  A jury will have to decide those issues in light of the Court's construction of the

Consulting Agreement.

      **IT IS ORDERED** that the Motion for Partial Summary Judgment on Plaintiff's Claim of

Breach of Contract is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Patrick J. Rogers
Lorena Olmos de Madalena
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff and Counterdefendant*

David A. Streubel
Timothy R. Mortimer
Streubel Kochersberger Mortimer LLC
Albuquerque, New Mexico

     *Attorneys for the Defendants, Counterclaimants,*
      *and Crossclaimants*