# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT WRITING
AND EVALUATION SERVICES, LLC,

        Plaintiff and Counterdefendant,

vs.                                             No. CIV 08-0552 JB/LAM

SHELLEY MABERRY, d/b/a,
MABERRY CONSULTING, INC., and
MABERRY CONSULTING AND
EVALUATION SERVICES, LLC,

        Defendants, Counterclaimants,
          and Crossclaimants,

vs.

DEBORAH MONTGOMERY,

        Crossclaim Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment on Their Claim for Declaratory Judgment, filed March 2, 2009 (Doc. 171). The Court held a hearing on April 8, 2009. The primary issues are: (i) whether the Consulting Agreement barred Defendant, Counterclaimant, and Crossclaimant Shelley Maberry from both soliciting and accepting business from Plaintiff and Counterdefendant Resource Associates Grant Writing and Evaluation Services, LLC's clients and providers during the relevant time period; (ii) whether there was a termination agreement between Resource Associates and Maberry; (iii) if there was a termination agreement, what the agreement included; and (iv) whether, if there was a termination agreement, Maberry violated that agreement. In its Memorandum Opinion and Order, entered April 23, 2009 (Doc.

207)("Memorandum Opinion and Order"), the Court construed the contractual provisions and the termination documents at issue on this motion.  Based on the Court's interpretation of those provisions and documents, the Court will grant the motion in part and deny it in part.  The Court will grant the motion to the extent that the Court finds that, pursuant to the Non-Solicitation Clauses, Maberry was permitted to accept business from Resource Associates clients as long as she did not approach them within the two-year period during which the Non-Solicitation Clauses were in effect, and from providers as long as she did not approach, solicit, or entice them within the two-year period during which the Non-Solicitation Clauses were in effect.  After a careful review of the record, the Court also finds that Resource Associates has not provided competent evidence that would create genuine issues of material fact regarding whether Maberry violated the Non-Solicitation Clauses of the Consulting Agreement.  The Court also finds, however,  that there are factual disputes regarding the existence and scope of the termination agreement which preclude summary judgment in favor of the Defendants with regard to the alleged termination agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts pertinent to this motion are largely set forth elsewhere.  See Memorandum Opinion and Order at 2-8.  This motion implicates the same issues as the Motion for Partial Summary Judgment on Plaintiff's Claim of Breach of Contract, filed March 2, 2009 (Doc. 167).  The arguments in that motion and this one are the same, and turn largely upon the Court's interpretation of the Consulting Agreement and various termination documents.

Briefly, the Defendants maintain that the Non-Solicitation Clauses in the Consulting Agreement prevent only proactive activity – soliciting, approaching, or enticing Resource Associates' clients and business partners for the applicable period of time.  The Defendants also argue that the prohibitive language is broader with respect to providers than it is to customers.

-2-

The Defendants also argue that there was no termination agreement.  Specifically, they argue that Maberry did not agree to the terms of the Termination Letter or of the Notice to Submit & Return Materials.  See Exhibit 3 to Response, Letter from Deborah Montgomery to Shelley Maberry at 1-2 (not dated), filed March 2, 2009 (168-4)("Termination Letter"); Notice to Submit & Return Materials at 1, filed March 2, 2009.  The Defendants insist that Maberry complied with the only obligations related to the termination documents.  Namely, they contend, she completed the work for which she had already been paid as the Confirmation Letter, which she signed, requested.  Beyond that compliance with the Confirmation Letter, the Defendants maintain that Maberry did not bind herself to the termination documents.

Resource Associates insists that the Non-Solicitation Clauses of the Consulting Agreement should be read to preclude both proactive acts and accepting business from Resource Associates' clients and providers during the relevant time period.  Resource Associates also urges the Court to find that there was a termination agreement that encompassed the terms of the termination documents.

The Defendants move pursuant to rule 56(a) of the Federal Rules of Civil Procedure, for summary judgment on Count V of the Second Amended Counterclaim.  In their motion, the Defendants ask the Court to declare the meaning of the Consulting Agreement and of the termination documents, and to declare that the Defendants did not violate the agreements by their conduct in the manner which Resource Associates asserts.  See Brief in Support of Defendants' Motion for Summary Judgment on Their Claim for Declaratory Judgment at 9, filed March 2, 2009 (Doc. 172)("Brief").  The Defendants insist that the "crux" of this case is whether the Non-Solicitation Clauses of the Consulting Agreement bar Maberry from accepting business from a Resource Associates client or provider who contacts Maberry first.  Transcript of Hearing at 65:13-

18 (taken April 8, 2009)(Streubel)("Tr.").[1]  Thus, as far as the Consulting Agreement goes, this motion  mostly concerns the meaning of the Non-Solicitation Clauses.  See id.

The Court queried the parties whether the contract was ambiguous and whether a Mark V[2] hearing would be necessary.  See Tr. at 61:14-23 (Court, Rogers, & Streubel).  Alternatively, the Court questioned the parties whether it should proceed to interpreting the contract provisions at issue on this motion.  See id.  The parties agreed that the terms were not ambiguous and that the Court should construe the contract at this time.  See id.

On April 24, 2009, the Court held a pretrial conference at which it stated on the record its inclination to grant summary judgment in favor of the Defendants on portions of Resource Associates' breach-of-contract claim.  See Transcript of Pretrial Conference at 2:16-3:4 (taken April 24, 2009)(Court)("Tr. II").  The Court expressed its concern that there was no competent evidence in the record that Maberry approached Resource Associates' clients, and approached, solicited, or enticed Resource Associates' providers.  See id.  The Court, however, gave Resource Associates an opportunity to point out to the Court any evidence it believed was in the record that would establish its claim.  See id. at 42:18-43:6.

Pursuant to the Court's invitation, Resource Associates highlighted deposition testimony and

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[2] Mark V, Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  In Mark V, Inc. v. Mellekas, the Supreme Court of New Mexico summarizes the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is ambiguous and leave construction of the contract to a jury.  According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law.  If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists."  Id., 845 P.2d at 1235 (citations omitted).

other evidence that it believes support its claim.  The Court also stated that the Defendants would

have an opportunity to respond.  See id.  Accordingly, the Defendants sent a letter to the Court, with

carbon copy to Resource Associates' counsel, stating their arguments in response to Resource

Associates' evidence.  See Letter from David A. Streubel to the Court at 1-5 (dated April 25, 2009).

## ANALYSIS

The Court's analysis in the earlier Memorandum Opinion and Order disposes of many of the

issues in this motion.  After conducting its own analysis of the Consulting Agreement, the Court

agreed with the parties that the terms at issue were not ambiguous and that the Court could properly

interpret them as a matter of law.  See Memorandum Opinion and Order at 15-16.  The Court held

that the only prohibitions that the Consulting Agreement provides regarding non-solicitation of

clients involve approaching Resource Associates' clients for the two-year period following

termination.  The prohibitions with respect to providers are slightly broader, but the Consulting

Agreement allows Maberry to accept business proposals from Resource Associates' providers as

long as she does not approach, solicit, or entice them.  The Consulting Agreement is silent about

accepting business, or about reacting to requests from Resource Associates' providers and

customers. .  See Memorandum Opinion and Order at 18-19.  The Court determined that it would

not inject terms into the Consulting Agreement that are not there.  See id.

The Court noted that a careful reading of the Non-Solicitation Clauses reveals that there are

different zones of proscribed activity with regard to clients and providers.  The Non-Solicitation

Clause for Customers prohibits Maberry from directly or indirectly "approach[ing]" Resource

Associates' customers or business partners.  Consulting Agreement at 3.  In contrast, the Non-

Solicitation Clause for Providers is more broadly drafted and prevents Maberry from directly or

indirectly "approach[ing], solicit[ing], entic[ing], or attempt[ing] to approach, solicit, or entice . .

. ."  Id.  It is difficult to escape the conclusion that the Non-Solicitation Clause for Providers proscribes a broader range of activity.

In the Memorandum Opinion, the Court explained that, in light of its construction of the Consulting Agreement,  there are genuine issues of material fact regarding whether Maberry solicited clients in violation of the Non-Solicitation Clauses.  The Court noted: "Both sides have presented evidence which precludes summary judgment.  A jury will have to decide those issues in light of the Court's construction of the Consulting Agreement."  Memorandum Opinion and Order at 23-24.

The Court also found that there is a factual dispute regarding whether Maberry agreed to the terms of the Termination Letter or of the Notice to Submit & Return Materials.  Given the factual dispute regarding the existence of such an agreement, the Court found that summary judgment in favor of Resource Associates was inappropriate.  See Memorandum Opinion and Order at 24.  The Court noted that a jury would have to determine whether Maberry agreed to the terms of the termination documents.  See id.

At the hearing, the Defendants raised an issue that the Court did not reach in its previous Memorandum Opinion and Order: The Defendants maintain that, regardless of how the Court construes the Consulting Agreement or the termination documents, Maberry Consulting and Evaluation Services, LLC, which Maberry formed after leaving Resource Associates, was not a party the Consulting Agreement or to any agreement that might have arisen out of the termination documents and is therefore not liable for any violations which might have occurred.  See Brief at 1, 4.  Resource Associates responds that there is no real distinction between Shelley Maberry and Maberry Consulting and Evaluation Services, LLC.  See Response at 2.  Resource Associates argues that Maberry should not be able to create a new business entity to reap the benefits of wrongdoing

See id. at 3.

The Court believes Resource Associates' argument is well founded. Maberry cannot – without escaping exposure to liability – create a new business entity, and then use that entity to perform acts which she, by contract, is not permitted to perform. At the same time, Maberry Consulting and Evaluation Services, LLC, as a separate entity, is not a party to the Consulting Agreement. Thus, Resource Associates does not have a viable breach-of-contract claim against Maberry Consulting and Evaluation Services, LLC. The Court therefore believes summary judgment is appropriate on the breach-of-contract claims against Maberry Consulting and Evaluation Services, LLC.

As far as Maberry Consulting Inc. is concerned, however, Resource Associates has put evidence in the record that Maberry Consulting Inc. is not a separate entity from Maberry. Resource Associates notes that, in a bankruptcy petition in the United States Bankruptcy Court for the Southern District of Illinois, Maberry filled in a box requiring her to provide "All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names)" with the name "Shelley Smith" and, below that name, "d/b/a Maberry Consulting." Exhibit 2 to Response, Bankruptcy Petition at 2 (Doc. 183-3). The manner in which Maberry held herself out in the bankruptcy petition is evidence that Maberry Consulting Inc. is not a separate entity. The Court will therefore not grant summary judgment in favor of the Defendants on the breach-of-contract claims against Maberry Inc. on the grounds that Maberry Inc. is not a party to the contract.

Given the Court's interpretation of the Consulting Agreement and the termination documents, the Court will grant the Defendants' motion in part and deny it in part. The Court finds that the Consulting agreement does not bar Maberry from passively accepting business. "Approach" is an active concept. The Consulting Agreement precludes Maberry from directly or indirectly

approaching Resource Associates clients or business partners.  There is no violation of the Non-Solicitation Clause for Customers when a customer makes the first move and seeks Maberry's business.

Under the Consulting Agreement, Maberry is required to refrain from approaching, soliciting, enticing, or attempting to approach, solicit, or entice providers.  Thus, even where a provider makes the first move, Maberry might violate her contract if she attempted to talk-up or sell the prospect about working with her rather than with Resource Associates.  Even so, "solicit" and "entice" both require maneuvering by one party to persuade another.  Black's Law Dictionary defines entice as: "To lure or induce; esp., to wrongfully solicit (a person) to do something."  See Black's Law Dictionary at 573 (8th ed. 2004).  In turn, "solicit" has been defined as: "'To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite.'"  Alpha Tax Services, Inc. v. Stuart, 158 Ariz. 169, 171, 761 P.2d 1073, 1076 (Ct. App. 1988)(quoting Black's Law Dictionary at 1639 (3d ed.)).

According to the Arizona Court of Appeals in Alpha Tax Services, Inc. v. Stuart, "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation.  Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee."  Id., 761 P.2d at 1076.  The Court agrees that solicitation requires more than merely being willing to discuss business after being first approached. The Court also believes, however, that the bar on enticement encompasses more than solicitation. It might happen, for example, that a former Resource Associates customer calls Maberry and asks about business opportunities with her.  If Maberry works to induce or encourage providers to work for her by, for example, pointing out the better terms she can offer, she would be in breach of the Consulting Agreement.

-8-

The Court has carefully reviewed its Memorandum Opinion and Order denying summary judgment in favor of Resource Associates.  The Court has also reviewed the record.  Based on its review, the Court concludes that the Defendants are entitled to summary judgment on the issue whether Maberry approached Resource Associates' customers or approached, solicited, or enticed, Resource Associates' providers.

"For the purposes of summary judgment, the court assumes the evidence of the nonmoving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor."  Velasquez v. Frontier Med., Inc., 375 F. Supp.2d 1253, 1263 (D.N.M. 2005)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  In this case, while there is some evidence that Maberry was providing services to Resource Associates' clients and doing business with Resource Associates providers, Resource Associates has not presented competent evidence that Maberry approached those customers, or approached, solicited, or enticed those providers.  That lack of evidence leads the Court to conclude that summary judgment in favor of the Defendants is appropriate on this issue.

Resource Associates has put evidence into the record that Maberry contracted with Resource Associates' clients and providers within the two year period after termination and that Maberry drafted and proposed contracts for those clients and providers.  See Exhibit 4 to Response, Deposition of Shelley Maberry at 194:2-19 (taken September 10, 2008)("Maberry Depo."); id. at 195:1-11; Exhibit 7 to Response, Responses of Defendant Maberry Consulting & Evaluation Services, LLC to Resource Associates' First Set of Discovery, Answer to Interrogatory No. 1, at 1-2 (filed March 2, 2009).  Resource Associates also points to deposition testimony in which Maberry stated that she was not concerned about approaching Resource Associates' clients and providers.

-9-

<u>See</u> Deposition of Shelley Maberry II at 148:4-15 (taken January 16, 2009)(Doc. 182-6)("Maberry Depo. II").  Drawing reasonable inferences in favor of Resource Associates, the Court believes that there is an important missing link in the chain of evidence on the breach-of-contract claim.  There is no testimony from providers or clients that Maberry approached them, for example.  In deciding whether to agree with Resource Associates' argument that Maberry approached customers and solicited or enticed providers, a jury would be forced to speculate that Maberry acquired the clients and providers impermissibly.

To supply the missing link in the evidence, Resource Associates has cited passages of deposition testimony that it believes allow an inference that Maberry approached customers, and approached, solicited, or enticed providers.  First, Resource Associates points to testimony by Maberry regarding a resume that was sent to potential customers.  <u>See</u> Maberry Depo. II 178:5-192:18.  In this testimony, Maberry stated that Montgomery had insisted that Maberry purchase a doctorate degree if she wanted to continue receiving work from Resource Associates.  <u>See</u> <u>id.</u> at 183:7-184:13.  Although Maberry complied with the request, it is her testimony that she instructed Resource Associates to cease using her resume when her relationship with Resource Associates ended.  <u>See</u> <u>id.</u> at 184:14-186:6.

Maberry testified that, after she purchased the doctorate degree from Belford University, the degree was added to her resume, although Maberry was not sure whether she or Resource Associates made the addition.  <u>See</u> <u>id.</u> at 182:18-21.  Maberry testified that Resource Associates had an executable copy of her resume on file which it would include when sending out grant applications.  <u>See</u> <u>id.</u> at 182: 20-25.

Maberry testified that, in September 2006, she accidentally sent an electronic mail message to Carrie Goodman, a Resource Associates bookkeeper, instead of the intended recipient, Carrie

Roberts.  According to Maberry's testimony, Roberts was a grant writer who previously asked Maberry for help with evaluations that Roberts was doing for her own clients.  See id. at 186:23-188:25.  Maberry testified that she did not send similar electronic mail messages to other grant writers and that she did not recall sending out an updated resume to anyone else.  See id. at 189:1-15.

The mistakenly sent electronic mail message had a version of Maberry's resume attached to it.  See id. at 189:16-18.  Maberry testified that she no longer uses the resume that was attached to the electronic mail message:

Q.  How does the resume you are currently using differ from this resume?

A.  I believe my current resume is much shorter than this one.

Q.  And under "Education," does your current resume indicate that you have a Doctor of Philosophy in Education from Southern Illinois University?

A.  No.

Q.  Do you have a Doctor of Philosophy in Education from Southern Illinois University?

A.  I do not.

Q.  You have no way of determining how many clients, or potential clients, received this version of your resume indicating you had received a Doctor of Philosophy in Education from Southern Illinois University?

A.  That's correct.  I have no way of knowing.

Id. at 190:14-191:7.

The proposition Resource Associates seeks to support with Maberry's testimony about the resume is that Maberry scatter-shot her updated resume without regard to whether she was reaching out to Resource Associates' clients and that some of the recipients might have been Resource Associates' clients.  The testimony, however, does not support such an interpretation unless certain

-11-

unreasonable inferences are supplied.  Maberry does not testify that she sent the resume in question to anyone.  The deposition testimony indicates that Maberry was not sure whether she prepared the resume in question.  Moreover, the testimony shows that both Resource Associates and Maberry would send out a version of Maberry's resume for business purposes.  While Maberry testified that she had no way of knowing how many clients or potential clients "received" the version of her resume in question, see Maberry Depo. II at 190:1-11, she did not testify that she sent out that resume.  Rather, what Maberry's testimony establishes is that she did not know how may clients or prospective clients received the version of her resume that included reference to the Doctor of Philosophy from Southern Illinois University.  Such testimony does not create a genuine issue of material fact whether Maberry sent out a resume to Resource Associates' clients and providers, or otherwise approached them.

Second, Resource Associates calls to the Court's attention the deposition testimony of Stacey Balkanski, who works in a customer-service capacity with Maberry.  In her deposition, Balkanski testified about the process by which she would receive incoming calls for Maberry.  Balkanski also discussed the process she used in dealing with potential clients for Maberry:

> Q. And when you approach a client with the reference list, the brochure and the price guide, then they consider those materials and call you back?
>
> A. Typically, yeah.
>
> Q. Okay, otherwise you – Do you call them to follow-up?
>
> A. Yeah, I try to.

Deposition of Stacey Balkanski at 90:13-19 (taken October 2, 2008)("Balkanski Depo.").  Balkanski also testified that her

> next step would be to offer them our services, you know, and you know, in the best way that I feel that we can serve them.  Again, if there's an open funding

-12-

> opportunity, I would inform them about that.  If they're a new organization, I would
> talk to them about prospect research, most definitely, because it's especially helpful
> if you're a new organization or if you're new to the grant game, so, you know, that
> would be primarily what I would do.

Id. at 92:18-93:2.

Resource Associates argues that Balkanski's testimony is evidence that Maberry and her company approached Resource Associates' clients.  The Court does not believe however, that such an inference can reasonably be drawn from the testimony.  During the same sequence of testimony, Balkanski stated Maberry Consulting does no marketing or targeting of customers.  See id. at 80:2-6. Balkanski also stated that she sent out brochures or reference lists if clients request them.  See id. at 79:15-80:1.  Thus, in context, Balkanski testified that her job was to respond to inquiries from potential customers, and not to reach out and seek those customers.

It is true that Balkansi responded affirmatively to a question phrased as "when you approach a client with the reference list, the brochure and the price guide, then they consider those materials and call you back?"  Id. at 90:13-15 (emphasis added).  In asking that question, however, Resource Associates' attorney carefully chose her words and used the term "approach."  The previous lines of testimony, however, demonstrate that Balkanski was responding to a series of hypotheticals that were premised on the client first contacting Maberry Consulting.  See id. at 86:16-90:12.  While there may be a scintilla of evidence in these passages that Balkanski or Maberry made the first contact with some prospective clients, it would be an impermissible leap to conclude from this slim testimony that Balkanski was approaching Resource Associates' clients.  While the fairest reading of the passage in context does not support her doing anything other than responding to inquiries, even if the Court assumes that Balkanski approached certain potential customers, there is no evidence she approached Resource Associates' customers.  The testimony that Resource Associates

-13-

cites is therefore not competent evidence of Maberry approaching Resource Associates' clients.

One final piece of evidence that Resource Associates cites for the proposition that Maberry approached clients, and approached, solicited, or enticed providers, is the existence of the website. It is true that the website is a marketing tool designed to bring in business opportunities. The Court does not believe that the existence of the website alone, however, should be viewed as evidence of an approach as that term is used in the Consulting Agreement. The Consulting Agreement does not forbid Maberry from advertising her services, or even attempting to solicit or entice business that does not belong to Resource Associates. An advertisement goes out to the general public, and Resource Associates' clients and non-clients alike might respond to such an advertisement. Thus, if the Court were to find that generalized, non-targeted advertisements – which is what a website is – constituted an approach, as that word is understood in the Consulting Agreement, Maberry would effectively be barred from advertizing for two years after leaving Resource Associates. To read the Consulting Agreement to bar Maberry from using a website to conduct her business would take away a key tool that she uses to bring in and keep track of business inquiries. The website, therefore, for good reason, is not, without more, a violation of the Consulting Agreement.

Thus, the Court will grant the request for declaratory relief to the extent that it finds that the Non-Solicitation Clauses permit Maberry to accept business from Resource Associates clients as long as she did not approach them within the two-year period during which the Non-Solicitation Clauses were in effect, and from providers as long as she did not approach, solicit, or entice them within the two-year period during which the Non-Solicitation Clauses were in effect. The Court will also grant summary judgment on the issue of breach of the Non-Solicitation Clauses in favor of the Defendants, because Resource Associates has failed to raise a genuine issue of material fact whether Maberry approached clients, or approached, solicited, or enticed providers.

The Court will, however, deny the request for declaratory relief to the extent that the Court will not decide, as a matter of law, whether a termination agreement outside the terms of the Confirmation Letter, which imposed non-competition or non-solicitation obligations beyond those found in the Consulting Agreement, existed. That issue is more properly a jury question, given that there is some evidence that such an agreement might have existed. In light of the disputed evidence, the ultimate determination of the existence of a termination agreement will turn on the credibility of the parties, and credibility determinations should be left to the jury in cases such as this one. "'[W]hen the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist.'" Eckhardt v. Charter Hosp. of Albuquerque, Inc., 124 N.M. 549, 559, 953 P.2d 722, 732 (Ct. App. 1997)(quoting Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct. App. 1983), overruled on other grounds by Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992)).

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment on Their Claim for Declaratory Judgment is granted in part and denied in part. Consistent with its previous Memorandum Opinion and Order, the Court finds that the Non-Solicitation Clauses do not preclude Maberry from accepting business from Resource Associates clients as long as she did not approach them within the two-year period during which the Non-Solicitation Clauses were in effect, and from providers as long as she did not approach, solicit, or entice them within the two-year period during which the Non-Solicitation Clauses were in effect. The Court finds that the prohibitions as to providers are broader and encompass activity that might occur even if a provider makes the first contact, such as inducing a switch from Resource Associates. The Court also finds it appropriate to enter summary judgment in favor of the Defendants on the issue whether the Defendants breached

the Non-Solicitation Clauses of the Consulting Agreement.   Finally, the Court finds that the

existence of a termination agreement arising out of the termination documents is subject to dispute

and should be left to the jury.

_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Patrick J. Rogers
Lorena Olmos de Madalena
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff, Counterdefendant, and Crossclaim Defendant*

David A. Streubel
Timothy R. Mortimer
Streubel Kochersberger Mortimer LLC
Albuquerque, New Mexico

    *Attorneys for the Defendants, Counterclaimants,*
     *and Crossclaimants*

-16-