# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RESOURCE ASSOCIATES GRANT WRITING
AND EVALUATION SERVICES, LLC,

        Plaintiff and Counterdefendant,

vs.                                             No. CIV 08-0552 JB/LAM

SHELLEY MABERRY, d/b/a,
MABERRY CONSULTING, INC., and
MABERRY CONSULTING AND
EVALUATION SERVICES, LLC,

        Defendants, Counterclaimants,
          and Crossclaimants,

vs.

DEBORAH MONTGOMERY,

        Crossclaim Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff, Counterdefendant, and Crossclaim Defendant's Motion for Summary Judgment on Defendants' Claim of Malicious Abuse of Process, filed March 2, 2009 (Doc. 169). The Court held a hearing on April 8, 2009. The primary issue is whether the Defendants have failed to establish a claim for malicious abuse of process. The decision on this issue requires the Court to evaluate the elements of malicious abuse of process and determine: (i) whether Plaintiff Resource Associates Grant Writing and Evaluation Services, LLC either sued without probable cause to do so or engaged in procedural improprieties; and (ii) whether Resource Associates' primary motive in bringing the lawsuit was an improper one. Because there are disputed issues regarding the merits of Resource Associates' lawsuit, and the Court cannot say

as a matter of law that Resource Associates had probable cause to bring this case, and because there are disputed issues regarding Resource Associates' motive for filing suit, the Court cannot properly enter summary judgment on the malicious-abuse-of-process claim based on the lack of probable cause. The Court finds, however, that the evidence does not support the theory of procedural impropriety. The Court will therefore deny the motion in part and grant it in part.

## FACTUAL BACKGROUND

In response to Resource Associates' claims against them, which largely revolve around alleged breaches of a Consulting Agreement that existed between Resource Associates and Defendant Shelley Maberry, the Defendants filed counterclaims and crossclaims, including a claim for malicious abuse of process. In their claim for malicious abuse of process, the Defendants allege that Resource Associates "initiated a lawsuit against Ms. Maberry and Maberry Consulting without reasonable belief in the validity of its factual and legal allegations against them." Second Amended Complaint and Counterlclaim ¶ 33, at 6, filed February 10, 2009 (Doc. 157)("Complaint"). The Defendants also allege that Resource Associates' "use of the process was not proper in the regular prosecution of the claim," see id. ¶ 34, at 5, and that the primary motive for Resource Associates' lawsuit was to accomplish an illegitimate end, see id.

When asked what investigation she conducted before filing suit against the Defendants, Montgomery testified:

> The main trigger that caused me to file the lawsuit was when I went to her [Maberry's] website and was essentially appalled. I saw many, many, many of our clients listed on there, and she was claiming them to be her clients, and that's when I thought that maybe we should investigate this further. And I knew that we weren't going to get to the truth of the matter, and to uncover what was really going on – which continues to be shocking to me – unless I filed a lawsuit.

Deposition of Deborah Montgomery at 513:14-22 (taken January 22, 2009)("Montgomery Depo.").

On May 30, 2008, Montgomery threatened Maberry with a lawsuit, and the next day, sent electronic-mail messages to providers Stacey Balkanski, Don Davis, and Philip Henry, which contained the text "You're Next:::))))))." Electronic-Mail Message to Don Davis at 1 (dated May 31, 2008). See Electronic-Mail Message to Stacey Balkanski at 1 (dated May 31, 2008); Deposition of Philip Henry at 69:18-70:21 (taken September 18, 2008)("Henry Depo.").

The Defendants also assert that, had Montgomery performed any pre-filing investigation, she would have known that Maberry did not violate the Consulting Agreement. See Response at 5. The Defendants state that Montgomery could have asked people who independently contracted with Maberry and found out that Maberry did not entice them away, but rather that they approached her. To support this contention, the Defendants cite providers' affidavits and testimony. See Declaration of Stacey Balkanski ¶ 3, at 1-2 (executed June 17, 2008)(Balkanski Decl.)("Neither Shelley Maberry, Maberry Consulting and Evaluation Services, LLC, Maberry Consulting, Inc., nor anyone on behalf of any or all of them ever, directly or indirectly, approached, solicited, enticed, attempted to approach, solicit, or entice me . . . ."); Declaration of Scott Tracy ¶ 4, at 2 (taken May 16, 2008)("Tracy Decl.")("Neither Shelley Maberry, Maberry Consulting and Evaluation Services, LLC, Maberry Consulting, Inc., nor anyone on behalf of any or all of them ever, directly or indirectly, approached, solicited, enticed, attempted to approach, solicit, or entice GrantsQuest . . . ."); Deposition of Stacey Balkanski at 46:20-24 (taken October 2, 2008)("Balkanski Depo.").

The Defendants also put forth testimony that Montgomery is a litigious person who "will take revenge and say I am going to sue so-and-so at the drop of the hat without any basis for saying that." Deposition of Reed "Don" Sumner Davis, II at 85:17-19 (taken December 10, 2008)("Davis Depo."); Deposition of Phil Henry at 75:6-78:11 (taken September 18, 2009)("Henry Depo.")).

In his deposition, in response to a question whether he believed Montgomery was litigious,

Henry testified:

> Yeah, I do.  I have to say, and I hate to say this, but when I first met Deb, she was
> involved in at least one lawsuit, and I think there was another one, I don't recall for
> sure, but the one with – I think it was a school district or something in Albuquerque.
> And then during the course of my working with her over the years, the first thing she
> would say when somebody would say, "Well, we don't think we owe you that," or
> "We don't want to pay you that," she would tell me "You tell them we're going to
> sue their ass off."  Some of the time I don't think she was serious, but other times,
> she absolutely was, and I always made it a point to say, "That is not a solution here.
> I can negotiate this.  We don't need to sue anybody," and as long as I was able to,
> you know, collect the fee, then that didn't happen.  But, of course, here we are again
> today.

Henry Depo. at 75:5-23.

## PROCEDURAL BACKGROUND

Resource Associates, pursuant to rule 56 of the Federal Rules of Civil Procedure, requests
that the Court enter judgment in its favor as to the Defendants' malicious abuse-of-process claim.
Resource Associates insists that the Defendants have not demonstrated any instances in which
Resource Associates misused the legal process.  According to Resource Associates, it initiated its
lawsuit to pursue its rights and it has pursued the lawsuit without resort to any irregular or improper
acts.  See Brief in Support of Motion for Summary Judgment on Defendants' Claim of Malicious
Abuse of Process at 4-5, filed March 2, 2009 (Doc. 170)("Brief").

Even if its lawsuit were irregular or improper, Resource Associates contends that there is no
evidence that it "knew" its claims to be meritless.  Id.  Moreover, Resource Associates argues that
the Defendants have not shown that Resource Associates engaged in its lawsuit "primarily for the
purpose of harassment or delay," given that Resource Associates has engaged in limited and
reasonable discovery.  Id.  Resource Associates argues that the existence of a business motive for
filing the lawsuit precludes a finding that it had an improper motive.  Finally, Resource Associates
insists that there is substantial evidence that Resource Associates believed its claims to be

meritorious.  See id.

The Defendants counter that there are genuine issues of material fact.  Specifically, the Defendants note that there is evidence that Resource Associates filed its lawsuit against them without probable cause or a "'reasonable belief, founded on known facts after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury.'"  Defendants' Response to Plaintiff and Crossclaim Defendant's Motion for Summary Judgment on Defendants' Claim of Malicious Abuse of Process at 4, filed March 19, 2009 (Doc. 181)("Response").  The Defendants contend that, if Resource Associates had conducted any reasonable pre-filing investigation, it would have know that Maberry did not violate the terms of the Consulting Agreement in any way.  See Response at 5.  The Defendants note that "[w]itnesses demonstrated that neither Maberry Consulting nor Ms. Maberry every directly or indirectly approached a former Resource Associates client to steal the client from Resource Associates."  Id. at 6.  The Defendants also point to the deposition testimony of providers who have testified that they approached Maberry Consulting for work, not the other way around, and that Maberry Consulting never lured them from working for Resource Associates.  See id.

The Defendants argue that Resource Associates has not tried to disguise its malicious and improper purpose in using process, and that Crossclaim Defendant Deborah Montgomery has sent threatening electronic mail messages to others in an attempt to keep them from associating themselves with the Defendants.  See id. at 7.  The Defendants insist that Montgomery is lashing out against them in an illegitimate fashion because of her own personal failures.  See id.

The Defendants also contend that, although they have provided ample evidence of a genuine issue of material fact regarding the purpose for which Resource Associates initiated suit, the Court should deny the motion for summary judgment because they have not yet been able to obtain

-5-

evidence from James Baird and Jaycee Baird.  See id. at 7-8.  Because they have not had the chance to obtain this evidence, the Defendants insist that summary judgment would be premature.  See id. at 8.

At the hearing, Resource Associates argued that it had made a showing of probable cause which was alone sufficient to warrant dismissal of the malicious-abuse-of-process claim.  See Transcript of Hearing at 113:11-14 (taken April 8, 2009)(Olmos)("Tr.").[1]  Resource Associates also argued that it has shown that its "number one motive" in filing was money damages and that such a showing would permit summary judgment in its favor.  See id. at 115:24-25 (Olmos).

The Defendants argued that there are alternative theories under which a party can sue for malicious abuse of process – one theory which would be sustained on a showing that the underlying lawsuit lacked probable cause, and one theory based on procedural impropriety which does not necessarily depend on the outcome of the underlying lawsuit.  See id. at 121:1-21 (Streubel).  The Defendants also contended that they were proceeding under both a lack-of-probable-case theory and a procedural-impropriety theory.  See id. at 121:22-122:3 (Streubel).  The Defendants also contended that much of the same evidence supports their malicious-abuse-of-process and civil-conspiracy claims.  See id. at 130:12-13 (Streubel).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has "the 'initial burden to show that there is an absence of evidence to support the nonmoving party's case.'"  Mirzai v. State of N.M. Gen. Services. Dep't,

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(quoting <u>Munoz v. St. Mary-Corwin Hosp.</u>,

221 F.3d 1160, 1164 (10th Cir. 2000)).  In addition to showing that there are no genuine issues of

material fact, the moving party must also show that it is entitled to judgment as a matter of law.  <u>See</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once the moving party meets that initial burden, the nonmoving party bears the burden of

setting "forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "For the purposes of summary judgment, the court assumes

the evidence of the nonmoving party to be true, resolves all doubts against the moving party,

construes all evidence in the light most favorable to the non-moving party, and draws all reasonable

inferences in the non-moving party's favor."  <u>Velasquez v. Frontier Med., Inc.</u>, 375 F.Supp.2d at

1263 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).  "Where the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586

(1986)(internal quotation marks omitted).

### <u>RELEVANT LAW REGARDING MALICIOUS ABUSE OF PROCESS</u>

The Supreme Court of New Mexico has outlined the elements of malicious abuse of process

as: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution

or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an

illegitimate end; and (3) damages."  <u>Durham v. Guest</u>, 2009 WL 701734, ¶ 29 (N.M. 2009).  "An

improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an

irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly

actionable under the tort of abuse of process."  <u>Id.</u>  Moreover, "[a] use of process is deemed to be

irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices

such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." Id. The Supreme Court of New Mexico has "emphasize[d] that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts." Id.

       **1.**      **Alternative Theories for Proving Misuse of Process.**

There are two alternative theories that a party can use to establish an improper proceeding. Aside from a lack of probable cause, the other way in which a party can demonstrate misuse of process is by showing that there was "some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process." Fleetwood Retail Corp. Of New Mexico v. LeDoux, 142 N.M. 150, 155, 164 P.3d 31, 36 (N.M. 2007)(internal quotation marks and citation omitted). "There are two ways of showing a procedural impropriety: (1) a 'procedural irregularity' involving misuse of procedural devices such as discovery or (2) 'an act that otherwise indicates the wrongful use of proceedings.'" Id. (quoting DeVaney v. Thriftway Marketing Corporation, 124 N.M. 512, 522, 953 P.2d 277, 287 (1997), overturned on other grounds in Durham v. Guest, 2009 WL 701734, ¶ 36).

"Probable cause in the malicious abuse of process context is defined as a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury. The lack of probable cause must be manifest." Fleetwood Retail Corp. Of New Mexico v. LeDoux, 142 N.M. at 154, 164 P.3d at 35. A "defendant must win the entire case as a condition to proceeding with a malicious abuse of process counterclaim based on lack of probable cause." Fleetwood Retail Corp. Of New Mexico v. LeDoux, 142 N.M. at 152, 164 P.3d at 33. In other words, "probable cause relates to the complaint as a whole, and the original plaintiff need not show favorable termination of each individual claim to establish an

effective defense to a subsequent suit for malicious abuse of process." Id. at 156, 164 P.3d at 37.

One rationale for this rule is that "the litigation process must allow plaintiffs room to frame the issues and make changes in their approach when necessary." Id. at 156, 164 P.3d at 37. Given such a need for flexibility, the Supreme Court of New Mexico in Fleetwood Retail Corp. Of New Mexico v. LeDoux declined adopt a rule that would "expose plaintiffs, who are subject to statutes of limitations and have not had the benefit of discovery when deciding what claims to pursue, to malicious abuse of process attacks based on lack of probable cause if it is later determined that one particular claim of several was not supported." Id., 164 P.3d at 37.

In contrast, "recovery by the original plaintiff is not an absolute defense to a malicious abuse of process claim founded on a procedural impropriety." Id. at 157, 164 P.3d at 38. This differing approach is rooted in the notion that the existence of procedural impropriety does not depend on the outcome of the underlying lawsuit. See id. 164 P.3d at 38. The Supreme Court of New Mexico in Fleetwood Retail Corp. Of New Mexico v. LeDoux explained: "Complaints that assert a multitude of unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim." Id. 164 P.3d at 38.

From Fleetwood Retail Corp. Of New Mexico v. LeDoux, it is apparent that New Mexico courts allow parties to proceed simultaneously on both lack-of-probable-cause and procedural-impropriety theories. The Supreme Court of New Mexico in Fleetwood Retail Corp. Of New Mexico v. LeDoux left open the possibility that the counterclaimant could have properly proceeded on a procedural-impropriety theory as an alternative to lack of probable cause if the counterclaimant had preserved the issue by presenting it to the jury. See id., 164 P.3d at 38.

2.    <u>**Primary Motive to Accomplish an Illegitimate End**</u>.

To prove this element of the malicious-abuse-of-process claim, "a plaintiff must show that the defendant did more than act with ill will or spite." <u>Weststar Mortg. Corp. v. Jackson</u>, 133 N.M. 114, 124, 61 P.3d 823, 833 (2002). The Supreme Court of New Mexico in <u>DeVaney v. Thriftway Marketing Corporation</u> elaborated upon this principle:

> The following are typical examples of the improper purposes that could serve as the basis for a malicious abuse of process action: (1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment or delay; or (4) a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion.

<u>DeVaney v. Thriftway Marketing Corporation</u>, 124 N.M. at 527, 953 P.2d at 287 (quoting <u>Restatement (Second) of Torts</u> § 676 cmt. c.).

<u>**ANALYSIS**</u>

The Defendants have attempted to articulate their malicious-abuse-of-process claim under both the lack-of-probable-case and improper-proceeding theories. The Defendants are allowed to proceed under either theory. The Court believes there are genuine issues of material fact precluding summary judgment on some issues. "For the purposes of summary judgment, the court assumes the evidence of the nonmoving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor." <u>Velasquez v. Frontier Med., Inc.</u>, 375 F.Supp.2d at 1263 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

In light of the standard for summary judgment, and given that this is Resource Associates' motion, the Court cannot properly say, as a matter of law, that there was probable cause. Because the Court cannot properly rule that there is probable cause, the Court cannot say that the first

element of the malicious-abuse-of-process claim is unsatisfied.  The Court concludes, however, that

the evidence in the record does not support a genuine issue of material fact regarding procedural

impropriety.  The Court will therefore not allow the Defendants to proceed to the jury on that theory.

Finally, there are genuine issues of material fact regarding whether Resource Associates' claims are

the product of an improper motive – the second required element of the claim.

**I.   THE COURT CANNOT SAY AT THIS TIME THAT RESOURCE ASSOCIATES' LAWSUIT WAS BASED ON PROBABLE CAUSE.**

The Supreme Court of New Mexico has stated that, in malicious-abuse-of-process claims,

"the existence of probable cause in the underlying proceeding, that is, whether the facts amount to

probable cause, is a question of law." DeVaney v. Thriftway Marketing Corporation, 124 N.M. at

521, 953 P.2d at 286 (citing Leyser v. Field, 5 N.M. 356, 362, 23 P. 173, 174 (1890)).  "Probable

cause in the malicious abuse of process context is defined as a reasonable belief, founded on known

facts established after a reasonable pre-filing investigation that a claim can be established to the

satisfaction of a court or jury. The lack of probable cause must be manifest." Fleetwood Retail

Corp. of New Mexico v. LeDoux, 142 N.M. at 154, 164 P.3d at 35.

The Defendants have presented evidence that Montgomery initiated this lawsuit without

conducting a reasonable pre-filing investigation.  When asked what investigation she conducted

before filing suit against the Defendants, Montgomery testified:

> The main trigger that caused me to file the lawsuit was when I went to her [Maberry's] website and was essentially appalled.  I saw many, many, many of our clients listed on there, and she was claiming them to be her clients, and that's when I thought that maybe we should investigate this further.  And I knew that we weren't going to get to the truth of the matter, and to uncover what was really going on – which continues to be shocking to me – unless I filed a lawsuit.

Montgomery Depo. at 513:14-22.  Other than viewing the website, however, the only other

investigation Montgomery testified that she recalled conducting was checking old electronic-mail

messages that demonstrated that some of Resource Associates' providers were also doing work for Maberry.  See id. at 511:8-514:7.

Montgomery's testimony is evidence that Montgomery proceeded without conducting a reasonable pre-filing investigation.  The Consulting Agreement did not forbid Maberry from accepting business from Resource Associates' clients or from using Resource Associates' providers, as long as Maberry did not approach, solicit, or entice them.  Nor is there any indication that those providers, who were independent contractors, were forbidden from doing work for companies other than Resource Associates – including Maberry.  Thus, the knowledge that Maberry shared some clients and providers with Resource Associates was not necessarily grounds to bring a lawsuit.  It may have been grounds to investigate the propriety and/or necessity of bringing such a suit.

The Defendants have also provided statements from providers, in the form of affidavits and deposition testimony, that they approached Maberry first.  See Balkanski Decl. ¶ 3, at 1-2 ("Neither Shelley Maberry, Maberry Consulting and Evaluation Services, LLC, Maberry Consulting, Inc., nor anyone on behalf of any or all of them ever, directly or indirectly, approached, solicited, enticed, attempted to approach, solicit, or entice me . . . ."); Tracy Decl. ¶ 4, at 2 ("Neither Shelley Maberry, Maberry Consulting and Evaluation Services, LLC, Maberry Consulting, Inc., nor anyone on behalf of any or all of them ever, directly or indirectly, approached, solicited, enticed, attempted to approach, solicit, or entice GrantsQuest . . . ."); Balkanski Depo. at 46:20-24.  This evidence is germane to the issue of probable cause, because, by raising it, the Defendants raise the possibility that, if Montgomery had asked any of these providers, they would have told her they approached Maberry first.  Montgomery would therefore have known that the providers that Maberry allegedly stole or lured away would not provide any proof necessary to carry Montgomery's claim that Maberry approached, solicited, or enticed them.  In its previous Memorandum Opinion and Order,

the Court noted that Montgomery provided no evidence that Maberry approached, enticed, or solicited Resource Associates' clients or providers. <u>See</u> Memorandum Opinion and Order at 2, entered April 28, 2009 (Doc. 209). The evidence to which the Defendants point in this motion suggests that Montgomery should have known, objectively, that she had no evidence of the breaches she alleges.

Given the evidence the Defendants have provided, viewed in the light most favorable to the defendants, the Court cannot say, as a matter of law, that there was probable cause. The Court notes that, recently the Supreme Court of New Mexico has pointed out how, in some situations, the determination of probable cause as a legal issue raises various practical difficulties at the trial level when malicious abuse of process based on lack of probable cause is presented as a counterclaim. If the facts going to probable cause are in dispute, and if a jury finds in favor of the plaintiff on any part of its action, then the malicious-abuse-of-process claim automatically fails. Even if a Court made a legal determination that there was no probable cause for the lawsuit, the jury's verdict in favor of the plaintiff would trump the legal determination. <u>See</u> <u>Fleetwood Retail Corp. Of New Mexico v. LeDoux</u>, 142 N.M. at 158, 164 P.3d at 39. If, however, the jury finds completely for the defendant, the defendant/counterclaimant must still prove a lack of probable cause. <u>See</u> <u>id.</u>, 164 P.3d at 39. Thus, the legal determination of probable cause is often closely tied to the factual issues that the jury must decide and with the merits of the underlying action.

In such circumstances, figuring out whether there was a lack of probable cause to support a counterclaim of malicious abuse of process becomes somewhat like the conundrum in Aristotle's Nicomachean Ethics, whereby one cannot know if he or she has achieved eudaimonia – happiness or the good life – until his or her life has reached its end. To handle this difficulty at trial, the Supreme Court of New Mexico made some suggestions:

-13-

One way would be to bifurcate the proceedings, having the jury decide the underlying claims first and then, if the verdict is in favor of the original defendant, present the malicious abuse of process counterclaim with the court deciding the ultimate issue of probable cause, if based on undisputed facts and inferences or after the jury has found the facts. Similarly, if the original defendant succeeds on a motion for directed verdict, then the malicious abuse of process counterclaim could go forward. Another way would be to use special verdict forms and jury instructions to the effect that the jury should not reach the malicious abuse of process issues unless it finds in favor of the original defendant on all of the underlying claims.

See id., 164 P.3d at 39.

The practical difficulties that have concerned New Mexico courts on legal probable-cause determination, however, do not pose a large obstacle in this case.  The Court concludes that the non-moving party has brought forth sufficient evidence to preclude a finding that Resource Associates had probable cause.  Thus, if the jury finds for the Defendants on all claims, the Court's conclusion regarding probable cause will be in harmony with that outcome.  The jury will then be able to proceed with deciding the factual issues in the malicious-abuse-of process claim.  If, however, the jury finds for the Resource Associates on at least one of its claims, the Court's refusal to find probable cause as a matter of law will drop out of the picture, and Resource Associates will have an absolute defense.  See id. at 156, 164 P.3d at 37 (stating that "any recovery by the original plaintiff will be an absolute defense to a malicious abuse of process claim founded on lack of probable cause.").  The Court believes the jury is capable of carrying out its task in this regard without undue difficulty.

## II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THERE WAS PROCEDURAL IMPROPRIETY.

"An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly actionable under the tort of abuse of process."  Id.  Moreover, "[a] use of process is deemed

-14-

to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." Id.  In this case, the Defendants do not point to, and the Court does not see, competent evidence of procedural improprieties on the part of Resource Associates that would give rise to a claim of malicious-abuse-of-process on that theory.

The Defendants have presented some testimony that Maberry is litigious, that she has a propensity for vengefulness, and that she threatened others associated with Maberry with lawsuits. See Davis Depo. at 85:17-19; Henry Depo. at 75:6-78:11.  Such evidence, however, does not tend to establish that Montgomery filed this lawsuit against Maberry as an extortion attempt, or that Montgomery or Resource Associates misused a procedural device, such as a subpoena, discovery, or other attachment.  Resource Associates has litigated this course in a conventional manner, seeking discovery and responding to discovery requests, and making objections to discovery requests when it feels appropriate.  The Court has not seen evidence of sanctionable discovery abuse or of untruthfulness in the exhibits.

The evidence the Defendants offer might speak to possible improper motives on Montgomery's part for bringing suit, but it does not establish procedural impropriety on her part. The evidence does not give rise to a genuine issue of material fact regarding procedural impropriety. The Court will therefore grant summary judgment in favor of Resource Associates and will preclude the Defendants from proceeding to the jury on that theory.

**III.  THERE ARE GENUINE ISSUES WHETHER RESOURCE ASSOCIATES BROUGHT ITS LAWSUIT WITH AN IMPROPER MOTIVE.**

For the second element, "[a] plaintiff claiming malicious abuse of process must also prove that the defendant initiated the legal proceedings primarily to accomplish an illegitimate end, that

is, 'to accomplish a purpose for which [the legal process] is not designed.'" Weststar Mortg. Corp. v. Jackson, 133 N.M. at 124, 61 P.3d at 833 (quoting DeVaney v. Thriftway Marketing Corporation, 124 N.M. at 527, 953 P.2d at 287)(brackets in Weststar Mortg. Corp. v. Jackson).  The Supreme Court of New Mexico has also stated that a "plaintiff must show that the defendant did more than act with ill will or spite."  Weststar Mortg. Corp. v. Jackson, 133 N.M. 114, 124, 61 P.3d 823, 833 (2002).

The Supreme Court of New Mexico in Weststar Mortg. Corp. v. Jackson cites the Restatement (Second) of Torts § 668 to describe several situations in which criminal proceedings are initiated for an improper purpose.  See Weststar Mortg. Corp. v. Jackson, 133 N.M. at 125, 61 P.3d at 834.  Those situations include:

> (1) when the accuser does not believe in the guilt of the accused, (2) when the proceedings are initiated primarily because of hostility or ill will toward the accused, (3) when the proceedings are initiated for the purpose of obtaining a private advantage even though the advantage might legitimately have been obtained in civil proceedings.

Id., 61 P.3d at 834 (quoting Restatement (Second) of Torts § 668 cmt. d).  At first glance, it appears inconsistent for the Supreme Court of New Mexico to say that more than ill will is required at one point, and then to cite Restatement (Second) of Torts § 668, which states that "hostility or ill will" might satisfy the improper motive element.  A closer examination of Restatement (Second) of Torts § 668  and New Mexico case law largely resolves this perceived inconsistency.

Restatement (Second) of Torts § 668 lists situations that arise when the underlying process was criminal.  There might be good reason to distinguish between situations where the underlying process was criminal as opposed to civil.[2]  Whatever the reason for the distinction, however, it is

---

[2] A party can bring a malicious-abuse-of-process claim against someone for wrongfully pursing a civil action against him or her.  A party can also bring a claim for malicious abuse of

apparent that, where the underlying suit is civil, ill-will is not enough to establish improper motive.

The Supreme Court of New Mexico has explained that, where the underlying process is civil, a party suing for abuse of process[3] must show a "perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." Farmers Gin Co. v. Ward, 73 N.M. 405, 406, 389 P.2d 9, 11 (1964). Even though

---

process against a private actor who wrongfully causes criminal charges to be brought against the party. The availability of a malicious-abuse-of-process claim, however, implicates different policy concerns, depending on whether the underlying process was criminal or civil in nature. Malicious -abuse-of-process claims where the underlying process is civil conflict with an important value: private citizens' ability to access the courts. See Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 156, 164 P.3d at 37. The law of malicious abuse of process must take into account the fact that, if its elements are interpreted too broadly, honest litigants' access to the courts will be improperly hampered. See id., 164 P.3d at 37. Access to the courts is not jeopardized to the same degree, however, when the claim for malicious abuse of process is brought against someone who causes criminal charges to be brought against an individual. Rather, the broad availability of a claim for malicious abuse of process against those causing criminal process to be brought might conflict with another important value – encouraging the reporting of criminal conduct.

For the most part, the situations listed in Restatement (Second) of Torts § 668, which relate to situations where the underlying process is criminal, have less applicability where a party attempts to allege that civil proceedings were brought against him for an improper purpose. It is, after all, a different matter to wrongfully subject someone to criminal sanctions, either out of ill will or to extort private gain, than it is to pursue private remedies against a person. The consequences of the latter are arguably less serious.

The New Mexico courts' citation to Restatement (Second) of Torts § 668, which lists "ill-will" as sufficient to establish improper motive when the underlying suit is criminal might be an indication that, where the balance is between the broad availability of a malicious-abuse-of-process claim – which protects individuals from wrongful criminal accusations – on one hand, and the need to encourage the reporting of criminal activity on the other hand, the balance tips slightly in favor of allowing a broader claim for malicious abuse of process. Perhaps for this reason, in the malicious criminal-prosecution context, "hostility or ill will" might be enough to satisfy the motive element, while in the civil context, New Mexico courts have held that "a plaintiff must show that the defendant did more than act with ill will or spite." Weststar Mortg. Corp. v. Jackson, 133 N.M. at 124, 61 P.3d at 833 (emphasis added).

[3] The case the Court cites for this proposition pre-dates DeVaney v. Thriftway Marketing Corporation, which merged abuse of process and malicious prosecution into one tort. For accuracy, the Court therefore refers to the tort in this instance consistent with the language of the older case.

Farmers Gin Co. v. Ward is an older case, and New Mexico courts have developed the law in this area considerably since 1964, there is no indication that this principle has been disturbed in any way. More recent case law has stated, consistent with the principle announced in Farmer's Gin Co., Inc. v. Ward, that "[a] plaintiff claiming malicious abuse of process must also prove that the defendant initiated the legal proceedings primarily to accomplish an illegitimate end, that is, 'to accomplish a purpose for which [the legal process] is not designed.'" Weststar Mortg. Corp. v. Jackson, 133 N.M. at 124, 61 P.3d at 833 (quoting DeVaney v. Thriftway Marketing Corporation, 124 N.M. at 527, 953 P.2d at 287)(brackets in Weststar Mortg. Corp. v. Jackson).

In this case, the underlying lawsuit is civil in nature. The situations illustrated in DeVaney v. Thriftway Marketing Corporation therefore provide the appropriate guidance for discussing the improper-motive element. Thus, the following are typical examples of the improper purposes that could serve as the basis for a malicious abuse-of-process action:

> (1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment or delay; or (4) a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion.

DeVaney v. Thriftway Marketing Corporation, 124 N.M. at 527, 953 P.2d at 287 (quoting Restatement (Second) of Torts § 676 cmt. c.).

The Supreme Court of New Mexico has not said that the improper motive must be the only reason for bringing the law suit. Rather, the Supreme Court of New Mexico has used the word "primarily" to describe the improper motive. "Primarily" does not mean "only." Merriam-Webster's Online Dictionary defines "primarily" as "for the most part." Merriam-Webster's Online Dictionary at http://www.merriam-webster.com/dictionary/primarily. In other words, use of the

-18-

word "primarily" suggests that the improper motivation be the main one, but not the only one.  Thus, the fact that Resource Associates is motivated in part by a desire to make a legitimate monetary recovery does not foreclose the possibility that the primary, or main, motive driving their lawsuit is another impermissible purpose.

The Defendants have made allegations that Montgomery has brought this lawsuit primarily to lash out in anger because of her own personal failings and to destroy Maberry.  The Defendants have pointed out that Resource Associates' business was decreasing drastically, see Henry Depo. at 70:23-71:16, and that Montgomery's response was to lash out, see id. at 76:18-77:5.  The Defendants also note that Montgomery sent electronic-mail messages threatening litigation against various individuals associated with Maberry and that Montgomery had threatened to sue others out of anger on different occasions.  See Tracy Depo. at 15:4-22 (discussing Montgomery's threat to sue when Tracy was on vacation during a time in which Montgomery wanted him to do a project); Balkanski Decl. ¶ 3, at 2 (stating that Montgomery threatened to sue Balkanski because of her relationship with Maberry).

In the Court's view, these would be impermissible purposes.  See DeVaney v. Thriftway Marketing Corporation, 124 N.M. at 527, 953 P.2d at 287 (noting as improperly motivated those lawsuits brought to harass or to deprive someone of the beneficial use of her property in a manner unrelated to the merits of the claim).  The Defendants have put some evidence in the record to substantiate their allegations.  The Court believes that the factual disputes surrounding Resource Associates' purposes for bringing this lawsuit preclude a legal determination that Resource Associates had primarily a proper motive for bringing its lawsuit.

Furthermore, "an overt misuse of process, such as a lack of probable cause, or an excessive attachment, may support an inference of an improper purpose . . . ."  DeVaney v. Thriftway

Marketing Corporation, 124 N.M. at 522, 953 P.2d at 287.  Here, as discussed above, the Defendants have provided evidence that Montgomery brought this suit without probable cause.  The evidence that there was no probable cause therefore also supports an inference of improper purpose.

In light of the New Mexico case law and the record before it, the Court concludes that there is a genuine issue of material fact regarding whether Resource Associates brought this suit without probable cause.  The Court therefore declines to grant summary judgment on that issue.  The Court finds, however, that the evidence in the record does not support the existence of a disputed issue of fact regarding procedural impropriety.  The Court will therefore preclude the Defendants from proceeding to the jury on the procedural-impropriety theory.  Finally, the Court finds that there is evidence of improper motive that precludes summary judgment.

**IT IS ORDERED** that Plaintiff, Counterdefendant, and Crossclaim Defendants' Motion for Summary Judgment on Defendant's Claim of Malicious Abuse of Process is granted in part and denied in part.  The Defendants will be allowed to proceed to the jury on the theory that Resource Associates filed suit without probable cause and with improper motive.  The Defendants will not, however, be allowed to proceed on the theory of procedural impropriety.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Patrick J. Rogers
Lorena Olmos de Madalena
Modrall Sperling Roehl Harris &
    Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff and Counterdefendant, and Crossclaim Defendant*

-20-

David A. Streubel
Timothy R. Mortimer
Streubel Kochersberger Mortimer LLC
Albuquerque, New Mexico

*Attorneys for the Defendants, Counterclaimants,*
*and Crossclaimants*